STROHN and others v. THE HARTFORD FIRE INSURANCE COMPANY.

INSURANCE: PARTIES. (1) *Oral contract valid.* (2) *Effect of agreement to insure C. for the benefit of himself and others.* (3) *Effect of agreement to execute "open policy."* (4) *Construction of written policy.* (5, 6) *By whom action may be instituted.*

1. An oral contract of insurance against fire is valid.
2. The complaint avers an oral agreement between defendant and C., a warehouseman, by which defendant " agreed to become insurer to said C., for the benefit of himself and others having tobacco in store and to be stored in his warehouse, on said stock of tobacco," etc. *Held,* that these words express an insurance of the tobacco of other persons which was or should be stored in C.'s warehouse, and not merely of C.'s interest therein.

3. The complaint further avers that defendant at the same time agreed to execute and deliver to C., for his interest and that of " all persons having tobacco in store in such warehouse, jointly, an open *policy* of insurance," etc.; and that defendant " then and there agreed to add to, or take from, the amount insured in said policy, as said stock of tobacco should increase or diminish, and at the option of said C. and other parties interested." *Held*, that there is nothing in this alleged agreement as to the policy (which was never issued) which destroys the effect of the oral contract of insurance sued upon, or limits the insurance to tobacco actually in the warehouse at the time of such oral agreement.

4. The complaint also sets out the terms of the written policy which was to be issued, in which the description of the property insured is, " tobacco owned and held by him (C.) in store," etc. *Held*,

(1) That such a description in a written policy would probably be construed to protect the interests of persons having tobacco stored with C.

(2) That if such would not be the unaided construction of the words, they would at least be of such doubtful meaning as to let in *extrinsic evidence* showing for whose benefit the insurance was obtained.

(3) That since the written policy would be thus explainable by the oral contract, the averments as to the language of the policy do not affect the terms of that contract.

5. Tobacco stored in said warehouse, and belonging in different quantities to C. and the several plaintiffs, having been destroyed by fire, during the life of the contract, *it seems* that an action might have been maintained against the insurer *in the name of C.*, either as the person nominally insured, or as the " trustee of an express trust," within the meaning of the statute; or that it might have been brought in the name of all the parties interested, *including C.*

6. C. settled his individual loss with the defendant, received his pay, and gave a release " without prejudice to the claims of [the plaintiffs] against the company, to be enforced by action in their own names, or in his for their benefit." *Held*,

(1) That C.'s interest and right of action in his own name being thus extinguished, the rights of plaintiffs are the same as if he had been only a nominal party from the beginning.

(2) That, the distinct interests of the several plaintiffs *not being distinctly specified* in the contract of insurance, it is doubtful whether an action by one of them for his separate interest could be maintained.

(3) That plaintiffs (either at common law or under sec. 18, ch. 122, R. S.) might *unite* in bringing an action for the amount due them, *in their own names*.

(4) That in such action, plaintiffs might prove their separate inter-ests, and have the amounts thereof separately assessed, and judgment might be entered, and execution issue, in favor of all, for the aggre-gate of their claims; leaving them afterwards to make distribution among themselves of the amount collected, according to the assess-ment, or as they might see fit.

APPEAL from the Circuit Court for *Rock* County.

Action to recover upon an alleged verbal contract of the defendant with one Comstock, to insure tobacco in a warehouse owned by Comstock in Janesville. The complaint alleged that Comstock, being in the business of receiving and storing tobacco in his warehouse in Janesville, and being the owner of a small quantity of tobacco himself, in pursuance of his own judgment and at the request of plaintiffs, applied to one Dear-born, defendant's agent, " for insurance against loss or damage by fire upon the property of himself and others, consisting of tobacco partly in bulk and partly in cases," in Comstock's warehouse; that defendant, by its said agent, " agreed to become an insurer to said Comstock, for the benefit of himself and others having tobacco in store and to be stored in his ware-house, on said stock of tobacco, for one month," and that defendant would " execute and deliver to said Comstock, for the benefit of said Comstock and all persons having tobacco in store in his warehouse, jointly, an open policy of insurance in the usual form of policies made out by them, the said defend-ants, for $400 for one month from said day, and the said defendants then and there agreed to add to, or take from, the amount insured in said policy, as said stock of tobacco should increase or diminish, and at the option of said Comstock and other parties interested." The complaint then alleged that the agent thereupon made an entry in the policy register of defendant kept at his office, according to the usual custom of said company, stating, among other things, the name of the insured (H. N. Comstock), the term (one month, open), the commencement and end of said term, the amount ($400), the

rate, and the "amount paid" or premium, together with the following words described as "copy of policy." "Four hundred dollars upon tobacco owned and held by him in store, all contained on first floor of the frame warehouse,"etc. (describing its location). It further alleged several subsequent verbal agreements of a similar nature between Comstock and defendant's agent, duly entered in said register, for additional insurance on tobacco owned or in store in Comstock's warehouse, whereby the insurance was increased to $2,400; that Comstock, in behalf of himself and the plaintiffs, promised and offered to pay the premiums to the agent; but that the agent waived payment thereof until he should demand them, and that they were never demanded, either by the agent or any other person. It also set forth the terms of the written policy which was to have been issued by defendant, in which the company agree " to insure H. N. Comstock * * on tobacco owned and held in store by him " in his warehouse. It then alleged the loss by fire of the property insured, and set forth a detailed statement of the respective interests of the plaintiffs in the tobacco stored in the warehouse at the time of the fire. It further alleged that Comstock (who was not made a party plaintiff in the action) had settled with defendant for his individual share of the loss, and had executed a receipt or release therefor to defendant, which was set forth in the complaint, and which contained the following stipulation: "This receipt is not to prejudice the claim under said entries in said register of any other person against said company, owning tobacco stored in said warehouse; whether sought to be enforced in their own name, or mine for their benefit, nor is this payment by said company to me to be taken as admitting in anywise any liability to said persons on the part of said insurance company."

Defendant demurred to the complaint, 1st, as not stating a cause of action; 2d, as improperly joining separate and distinct causes of action in favor of each of the plaintiffs; 3d, because of the omission of Comstock as a plaintiff. The circuit court

overruled the demurrer; from which order defendant appealed.

*Sloan & McElroy,* for appellants, argued that by a fair con struction of the agreement stated in the complaint, no one but ·Comstock was insured, and that the language " on tobacco owned and held in store by him," was an insurance of Com stock's interest only, and could not by any proper construction be extended to cover the interest of other persons.    Again, there is clearly a misjoinder of causes· of action.    The com plaint shows that the respective firms and individuals joined as plaintiffs had no joint interest, but each was the separate owner of a distinct and separate portion of the tobacco stored in the warehouse at the time of the fire.    An action *ex contractu* can not be maintained by several plaintiffs, unless they have a joint interest in the subject matter of the action.  Barbour on Parties, 31; *Lexington & Big Sandy R. R. Co. v. Goodman,* 15 How., Pr., 85; *Newcomb v. Horton,* 18 Wis., 566; *Barnes v. City of Beloit,* 19 id., 93; *McCormick v. Ferrier,* Hayes & Jones (Irish Exch. R.), 12.   Nor can an action be maintained in the names of the plaintiffs, either jointly or severally, but the case falls within sec. 14, ch. 122, R. S., and the action should have been brought in Comstock's name as trustee of an express trust. Sec. 13 of this chapter does not affect the question as to the right of plaintiffs to join in the action.   There being no joint interest of plaintiffs in the property insured, they can not maintain a joint action, but each must sue for the loss of his own property. Before the code, no one but Comstock could have sued on the alleged agreements, and under the code, none can join in an action as plaintiffs who could not have joined before, the right of a trustee to sue being saved by section 14 above cited.   The provision of section 13, that the real party in interest must sue, has no application to this case.   *Robbins v. Deverell,* 20 Wis., 142; *Grinnell v. Schmidt,* 2 Sandf., 706.

*S. A. Hudson,* with whom was *J. B. Cassoday,* of counsel, for respondents, to the point that a parol agreement to insure is valid, cited *Trustees of First Baptist Church v. Brooklyn Fire*

*Ins. Co.*, 19 N. Y., 305; *Commercial Mut. Marine Ins. Co. v. Union Mut. Ins. Co.*, 19 How. (U. S.), 318; *Audubon v. Excels. Ins. Co.*, 27 N. Y., 216; *Fish v. Cottenet*, 44 N. Y., 538; *N. W. Iron Co. v. Ætna Ins. Co.*, 23 Wis., 160, and 26 id., 78.   The agreement in this case, though made in the name of Comstock, for his own benefit and for all others having tobacco in store in his warehouse, without naming them, will be applied to the interests of the different parties, and extrinsic evidence may be resorted to for the purpose of showing the real parties in interest.   *Clinton v. Hope Ins. Co.*, 45 N. Y., 454, and cases cited; *Waring v. Indemnity Fire Ins. Co.*, id., 606; *Herkimer v. Rice*, 27 N. Y., 179, 180; Angell on Insurance, § 79; *Crawford v. Hunter*, 8 Term, 13; *Ætna Ins. Co. v. Jackson*, 16 B. Mon., 242; 1 Phillips on Insurance, 197, 382–386, 412; 2 id., 1965; *Stillwell v. Staples*, 19 N. Y., 403–405.

Comstock being the agent of the plaintiffs, and his claim having been paid in full, the action may be maintained in the name of the plaintiffs as principals, and the real parties in interest.   *Lane v. Columbus Ins. Co.*, 2 Code Rep., 65; *Erickson v. Compton*, 6 How. Pr. R., 471; 2 Phillips on Insurance, 1965; Story on Agency, 161, 269; *Brown v. Cherry*, 38 How. Pr. R., 358, 359.   The agreement of insurance being an entirety, and all the plaintiffs having an interest in it, though differing in amount, all are properly joined in the action.   *Loomis v. Brown*, 16 Barb., 325; R. S., p. 714, sec. 13, p. 715, secs. 18 and 20; 2 Phillips on Ins., 1958.   On a policy insuring several, if one part with his interest, the action may be maintained by the others. 1 Phillips on Ins., 386.   The action might have been maintained in the name of Comtock as trustee of an express trust, and for the benefit of plaintiffs, or they could maintain it in their own names.   And Comstock being no longer interested in the insurance, there was no necessity for making him a party. 2 Phillips on Ins., 1965; Story on Agency, 403, 160, 161.

DIXON, C. J.   As an action upon a verbal contract of insur-

ance, which is valid (*Northwestern Iron Co. v. Ætna Ins. Co.*, 26 Wis., 78), the complaint plainly states an agreement to insure the property of the plaintiffs destroyed by the fire, unless the averments in that regard are to be considered as neutralized or reversed by others also found in the complaint, respecting the additions to or deductions to be made from the amounts insured, and respecting what the language of the written policy would have been in case one had been issued. Counsel for the defendant point to these latter averments in support of their demurrer, and insist that those respecting the additions and deductions show that it was only property actually in the warehouse at the time of entering into the verbal agreement or agreements to insure, which was insured or intended to be, and that it appears from the others that the insurance covered no property except that owned and held individually by the warehouseman, Mr. Comstock, who applied for and obtained the insurance.

With respect to the agreement for adding to or taking from the amounts insured by the policy, we cannot give to it the effect claimed by counsel. It was at most a mere executory oral agreement, made at the same time of that first verbally entered into for the insurance, and having relation only to the future written policy, which was never issued. With regard to that policy, it is alleged that the defendant "then and there agreed to add to, or take from, the amounts insured in said policy, as said stock of tobacco in store should increase or diminish, at the option of said H. N. Comstock and other parties interested." This agreement can not, we think, be said to countervail or thwart the verbal agreement sued on, and which is previously alleged to have been made with Comstock for the insurance of "tobacco in store and *to be stored* in his warehouse." It is not perceived how the agreement thus positively averred to have been made, was undone, or its effect destroyed, by the additional one likewise alleged to have been entered into with reference to the future written policy, and what should be done

under that policy when issued. It strikes us that the latter agreement is in harmony, rather than in conflict, with the former.

And as to what would have been the written policy, counsel seek by the language of that to curtail or restrain the terms of the alleged verbal agreement. The verbal agreement is stated to have been for insurance " to said H. N. Comstock, for the benefit of himself *and others* having tobacco in store and to be stored in his warehouse." The language of the written policy to be executed and delivered to Comstock, it is alleged, would have been " on tobacco owned and held in store by him." It is argued that these words control the verbal agreement, and limit the insurance to property owned by Comstock, or in which he had an insurable interest, to the extent of that interest, as for charges for storage, commissions, etc. Conceding that the verbal agreement is thus controlled, it is by no means clear that the words of the written policy, "held in store," ought not to be construed to embrace the tobacco of others kept in the warehouse and held by Comstock at the time of its destruction by fire. In *Waters v. Assurance Co.*, 5 E. & B., 870 [85 E. C. L., 868], where the plaintiff, describing himself as a flour and corn factor, had taken out a policy, which was, amongst other things, on goods in his warehouses, and on " goods in trust or on commission," the question was upon the meaning of those words; and the court of Queen's Bench held that it was an insurance to the full value of the goods. Lord CAMPBELL, C. J., said: " The first question is, whether, upon the construction of the contract, these goods were intended to be covered by the policy. I think in either policy the description is such as to include them. What is meant in those policies by the words, ' goods in trust?' I think that means goods with which the assured were intrusted; not goods held in trust in the strict technical sense, so held that there was only an equitable obligation on the assured enforceable by a subpœna in chancery, but goods with which they were

intrusted in the ordinary sense of the word. They were so intrusted with the goods deposited on their wharfs. I cannot doubt the policy was intended to protect such goods; and it would be very inconvenient if wharfingers could not protect such goods by a floating policy. Then, this being the meaning of the policy, is there anything illegal in it? It cannot now be disputed that it would be legal at common law; and Mr. Lush properly admits that it is not prohibited by the terms of any statute. And I think that a person intrusted with goods can insure them without orders from the owner, and even without informing him that there was such a policy. It would be most inconvenient in business, if a wharfinger could not, at his own cost, keep up a floating policy for the benefit of all who might become his customers. The last point that arises is, to what extent does the policy protect those goods? The defendants say it was only the plaintiff's personal interest. But the policies are in terms contracts to make good 'all such damage and loss as may happen by fire to the property hereinbefore mentioned.' That is a verbal contract; and, as the property is wholly destroyed, the value of the whole must be made good, not merely the particular interest of the plaintiffs. They will be entitled to apply so much to cover their own interest, and will be trustees for the owners as to the rest. The authorities are clear that an assurance made without orders may be ratified by the owners of the property, and then the assurers become trustees for them."

It is not clear, therefore, that the language of the policy, if the same had been executed and delivered, would not have been construed so as to protect the goods of these plaintiffs. We are inclined to give it as our opinion that it would. Tobacco "held in store" might very well be construed to include tobacco deposited in the warehouse by others.

But if such would not have been the *prima facie* or unaided construction, the words "held in store" must at least have been held of sufficiently ambiguous or doubtful import to let

in extrinsic evidence of their meaning and what the parties intended by them. The rule of evidence in such cases, where the contract is imperfect or ambiguous in the designation of the persons for whose benefit the insurance is obtained, or in any other respect, so that it cannot be clearly understood without explanation, is correctly stated by the court of appeals in *Clinton v. The Hope Ins. Co.*, 45 N. Y., 460, that "extrinsic evidence may be resorted to, to ascertain the meaning of the contract; and when thus ascertained, it will be held to apply to the interests intended to be covered by it, and they will be deemed be to comprehended within it, who were in the mind of the parties when the contract was made." See also *Ganson v. Madigan*, 15 Wis., 144; *Prentiss v. Brewer*, 17 id., 635; *Staak v. Sigelkow*, 12 id., 234; *Rockwell v. The Mutual Life Ins. Co.*, 21 id., 548; *Godfrey v. Germain*, 24 id., 410.

If the written policy would be thus explainable by proof of the oral agreement, it follows that the averment of what the language of such policy would have been, in the particulars relied upon by defendant's counsel, cannot vitiate or annul the verbal contract declared on, or vary the terms of that contract as set out in the complaint.

The other questions presented by the demurrer are as to the right of the plaintiffs to maintain this action in their own names, and whether there is not a misjoinder of causes of action. It is contended that there is a misjoinder of causes of action, and that the plaintiffs cannot sue in their own names, either jointly or severally. The proposition is undoubted, that an action might have been maintained in the name of Comstock, either as the nominal assured and promisee or contracting party, or as the trustee of an express trust under the code. The rule seems well settled at common law, that, on a policy not under seal, effected by one person "for whom it may concern," or "for himself and whom it may concern," assumpsit lies in the name of such person for the benefit of those concerned, or in the names of all concerned. 2 Phillips

on Insurance, §§ 1958, 1965, and authorities cited. And the provision of the code (R. S., ch. 122, sec. 14; 2 Tay. Stats., 1419, § 14), that a trustee of an express trust may sue without joining with him the person for whose benefit the action is prosecuted, has not changed the rule.

But the question more particularly here presented, is, whether "the other parties concerned," and for whose benefit, as well as that of the party making the contract, the insurance was effected, can join in an action upon the contract, their interests in the proceeds of the action, or sums to be recovered, being several and distinct. Comstock, the contracting party and agent of the plaintiffs, has settled his individual loss with the company, received his pay, and given a release, but without prejudice to the claims of the plaintiffs against the company, to be enforced by action in their own names, or in his for their benefit. Such is the language of the release. Comstock has thus, with the assent and by the direct act or procurement of the company, ceased to have any personal or beneficial interest in the contract, and the plaintiffs sue without joining him, being severally interested in distinct sums according to the value of the respective quantities of tobacco separately owned by them, and which were in the warehouse at the time of its destruction by fire. The interest of Comstock, and any right of action in his own behalf, having been thus extinguished, and the plaintiffs having become the sole parties concerned and to be benefited, we are inclined to look upon the contract as if Comstock had been a mere nominal party in the first instance. If such had been the contract, Comstock being the nominal assured merely, little doubt of the right of the plaintiffs to sue and to join each other in an action in their own names could have existed. Such appears to be the rule recognized by all the authorities so numerously cited by Mr. Phillips to the paragraph last above referred to. And the case of *McCormick v. Ferrier*, Hayes & Jones (Irish Exch. R.), 12, may be mentioned as an instance where parties having separate interests in a policy, but

who joined in action upon it, were permitted to recover. It was held that their separate interests might be proved in the action. It is laid down by Mr. Phillips, and no doubt correctly (§ 1960), that where two or more persons are insured in the same policy on distinct interests, distinctly specified, in the same subject, each has a separate action on the policy. The same rule would unquestionably prevail where distinct interests, distinctly specified, in distinct subjects, were the objects of protection by the same policy. But in the present case the distinct interests were not distinctly specified in the agreement to insure, so as to bring the contract within the rule authorizing each party to maintain a separate action upon it, and it is very doubtful whether any such action could be maintained. The company cannot be said to have made or to have contemplated a separate promise to each party in interest under the agreement, upon which such party might institute a separate action ; and it would seem to be very unjust to the company to hold that such an action might be brought, thus subjecting it to a multiplicity of suits upon a single contract, where the evident intention on its part was that only one action should be maintained to settle any controversy which might arise under it. No especial difficulty is perceived in the way of allowing the plaintiffs to prove their separate interests on the trial, and having the amounts thereof separately assessed, and, in the event of a recovery, of permitting judgment to be entered jointly in favor of all for the aggregate of the respective claims, with costs, upon which execution may issue and satisfaction be obtained, leaving the plaintiffs afterwards to arrange the proportions and make distribution among themselves according to the assessment, or as they may see fit. Such, it would seem, must be the course pursued in actions of this description at common law; and such also, as will presently be observed, appears to be the practice sanctioned by the code. .

The case of *Copeland v. Mercantile Ins. Co.*, 6 Pick., 198, seems to have a strong bearing on the questions we have been consid-

ering.   It was a suit commenced in the name of the broker who
had taken out the policy in his own name for the benefit of
himself and four other persons, one of whom had disavowed
the plaintiff's authority to prosecute the suit.   It was held that
the suit might well proceed for the benefit of the plaintiff and
of the other three.   Speaking of the party who had counter-
manded the authority of the plaintiff to prosecute, the court
said: "He might well prohibit the plaintiff from maintaining
the suit for his proportion of the loss; but the policy was in
the name of the plaintiff.   The action is brought by him for
the benefit of himself and the other owners; and it would be
manifestly unjust that one owner, *having received payment for
his part of the loss, having compromised with the underwriters*, or
being unwilling to litigate the claim, should have the power to
defeat the legal rights of the others.   He might well revoke the
power which he had given to the plaintiff to prosecute for his
benefit, but he could not annul the authority which the other
owners had given to sue for them, much less the right which
he had to maintain the action in his own name for his own
benefit."

The code (R. S., ch. 122, sec. 18; 2 Tay. Stats., 1419, § 18)
enacts that "all persons having an interest in the subject of the
action, and in obtaining the relief demanded, may be joined as
plaintiffs, except as otherwise provided in this title."   This pro-
vision underwent very thorough examination in *Loomis v.
Brown*, 16 Barb., 325, by GRIDLEY, J., delivering the opinion
of the court, in which it was decided that this section furnishes
the rule as to parties plaintiff in all cases, whether such as
were formerly the subjects of suits in equity, or of actions at
law.   That was an action brought upon an injunction bond, to
recover damages sustained by several plaintiffs in consequence
of the injunction; and it was held that all the obligees might
join as plaintiffs, notwithstanding the claim of one of them
was different in its character and amount from that of the
others.   It is true that the rule of the common law (which fa-

vors the right of the present plaintiffs to join as well), that in actions upon joint covenants, all the covenantees may join, although their interests are several, was referred to by the court; but the decision was distinctly placed on the rule thus enacted by the code. That decision, although it is now twenty years since it was made, seems never to have been questioned, but to have been generally acquiesced in by the profession in that state, if, indeed, it may not be said to have been directly approved by the court of appeals in *Cole v. Reynolds*, 18 N. Y., 74. The decision in the latter case seems to have gone on the principle that all the peculiar technical rules of the common law, relating to the form of the action but not affecting the substantial rights of the parties, have been abolished by the code. And see also *Pearce v. Hitchcock*, 2 N. Y., 388, where, upon a statutory bond given to several attaching creditors, it was held that, although the obligees had separate and distinct interests, an action might be prosecuted by them jointly, or by any one of them separately in respect to his separate demand. And in *General Mutual Ins. Co. v. Benson*, 5 Duer, 168, it is laid down by DUER, J., as a general rule under the code, that when a fund is in the hands of a trustee, which he is bound to distribute to different persons in unequal proportion, all interested in the distribution are necessary parties to an action against the trustee.

In *Loomis v. Brown*, the subject of the action was held to be the damage arising out of the injunction, and GRIDLEY, J., said : " All have an *interest* in the ' subject of the action and in obtaining the relief demanded,' that is, in the damages arising out of the operation of the injunction. It is not said to be a *joint* or *equal* or even a *common interest* — but simply an *interest* in the subject of the action, with a view of doing full justice and settling the rights of all parties in interest, in *one suit.*" And he furthermore remarks: " It has recently been decided in a *court of law* in England, that under a statute which makes railroads responsible for the damages sustained by the widow

and children of a deceased husband and father, killed by the negligence of the corporation or its agents, a suit lies, by the several parties entitled under the act, *jointly ;* and a verdict was rendered in the suit separately, for the widow and the children. This was a case *at law*, and I cite it to show that the legislature can by implication exercise a control over the proceedings in a court of justice, and that it regulates even the verdict, in a way wholly foreign to the well known rules applicable to ordinary proceedings of juries, and their verdicts."

The cases arising in this state, and which have heretofore been decided by this court, have not been such as to call for an explicit exposition of the statute under consideration. In the following, it was held that the joinder of the parties plaintiff was proper : *Gates v. Boomer*, 17 Wis., 455 ; *Cleveland v. The Marine Bank*, id., 545 ; *The Merchants' Bank v. Chandler*, 19 id., 434. These were creditors' suits, or proceedings in that nature. See also *Welch v. Sackett*, 12 Wis., 243. In the following it was decided that there was an improper joinder. *Newcomb v. Horton*, 18 Wis., 566; *Barnes v. Beloit*, 19 id., 93. These were proceedings in equity to restrain the sale of lands for taxes.

On the whole, we are of opinion that the joinder of the plaintiffs in this action is authorized by the code, as well as in harmony with the practice at common law in this particular class of cases.

*By the Court.* — Order affirmed.