## THOMAS PARKER V. P. C. ROSS.

### No. 6309.

**Trustee—His Duty and Liability.**—Two vendor's lien notes were executed to Parker, one of them in trust for Ross. The vendee of the land executed to Parker a deed of trust to secure the notes and it was provided that Parker's note had preference. By agreement insisted upon by Ross the vendee insured the premises, Parker holding the policies. In the policies it was stipulated, "Payable to Thomas Parker as his interest may appear." In the deed of trust it was stipulated that the insurance "was to cover the amount that may be due on both notes * * * for the benefit and protection of Thomas Parker or the owner of said notes." Ross received his note from Parker. The insured improvements upon the land were destroyed by fire. Parker collected the insurance money, retained the amount of his note, and gave the balance to the purchaser. _Held_, that Parker's duty was to appropriate the insurance money as was provided for in trust deed, and having disposed of the money otherwise he was liable to .Ross for his proportion.

APPEAL from McLennan. Tried below before Hon. Eugene Williams. The opinion states the case.

_Anderson, Flint & Anderson_, for appellant.—We submit that the evidence shows that appellee Ross and Braley alone had the policies taken out. Parker had nothing to do with it. The policies were by them made to read "payable to Thomas Parker as his interest may appear." The contract was made by appellee and Braley with the insurance companies and nothing stated as to any interest of appellee, and his interest was not protected by his own omission and, neglect, and not by either fraud, accident, or mistake. Had the policies read "loss payable to whom it may concern," then inquiry could have been made and his interest protected.

As Braley paid the premium and the policies were made to him and loss to Thomas Parker as his interest might appear only, no other person had any interest in the policies except Braley and Parker. After Parker was paid the amount due him he could not prevent Braley from receiving the balance due on the policies.

The provisions in the deed of trust that the property was to be insured to secure both notes might have bound appellant to look to the interest of appellee (Ross) had he (Ross) not by his own dealing with Braley and the insurance companies precluded appellant from representing him. When the interest of Thomas Parker was satisfied Braley alone was authorized to receive the balance. May on Ins., secs. 445–50.

Policies of insurance are written contracts; they are subject to the same rules of construction as other written contracts, and can not be varied by parol except by reason of fraud, accident, or mistake. May on Ins., secs. 179–89; Blanchard v. Dyer, 38 Am. Dec., 38, and authorities cited; 27 Ohio St., 1.

We further submit, if we be mistaken in the above, that the judgment in this cause should in no event have been for more than the amount remaining after Parker's interest was paid.

*Harrison & Monroe,* for appellee.—So far as the insurance money was concerned the $832.19 note held by appellant and the $1167.81 note held by appellee stood on the same footing, the agreement in the trust deed that the former note was a preferred lien on the property itself having nothing to do with the insurance money, since a mortgagee is not entitled in any event to insurance money on property destroyed in absence of special agreement, and a covenant to insure premises does not run with the land, but is independent of same.   Cameron v. Fay, 55 Texas, 61, 62; Carter v. Rocket, 8 Paige, 437; Ins. Co. v. Lawrence, 10 Pet., 507; Dunlap v. Avery, 89 N. Y. 592; Reid v. McCrum, 91 N. Y., 412.

Mortgagees or others interested in insurance money under an agreement to insure for their benefit are entitled to their proportionate ratio of the insurance money.   Durand v. Thouron, 1 Port. (Ala.), 238; Watkins v. Durand, Id., 251.

STAYTON, CHIEF JUSTICE.—Appellee was indebted to appellant in about the sum of $1332, of which the sum of about $832 was the purchase money for certain real property bought by appellee.   This last named sum was secured by trust deed, and under this appellant had caused the property to be advertised for sale.

Before the day named for the sale appellee found a purchaser for the property who was willing to pay $3000 for it if he could get time on all the purchase money except $500.   Negotiations between appellant and appellee ensued and it was agreed that this purchaser might have the property on terms proposed by him, but there was a misunderstanding as to the time when the sale advertised was to be made, and the purchaser, who had returned to his home, which was distant from the place of sale, did not return until the day before the date at which it was understood the sale would be made if he did not complete his purchase. The day of his return was the day on which the property was advertised for sale, and before the sale was made, he not then having returned, appellee requested that the sale be postponed until his return, but appellant declined to postpone the sale but agreed with appellee that the sale should be made as advertised and that he would purchase the property and afterwards consummate the sale should the person desiring to purchase return, on the terms before agreed upon as though the sale had not been made under the trust deed.

The terms were that appellant should have the cash payment, to be credited on the entire debt due him by appellee, and the note of the pur-

chaser for the balance due him, and the balance of the purchase money was to be paid to appellee.

There was a further agreement under which appellee was to have the right to reclaim the property should the expected purchaser not return.

The purchaser did return on the afternoon of the day on which the sale under the trust deed was made, and it was then agreed that he should have the property for $2500.

In pursuance of this agreement, the trustee having made a deed to appellant, he conveyed the property to the purchaser and received from him $500 in cash and two promissory notes for the balance, which were made payable to himself.

One of these notes was for $832.19, and the other for $1167.81.

The smaller of these notes was for the balance due appellant and was retained by him, and the other was delivered to appellee without any written transfer.

In pursuance of the agreement both of these notes were secured by a trust deed which stipulated that the note retained by appellant should be secured by priority of lien.

In order that the payment of the note delivered to appellee should be further secured appellee contracted with the purchaser that he should keep insurance on the property to the extent of $1500.

The stipulation in reference to this was contained in the trust deed and was as follows: "It is further agreed, and I do obligate myself to insure the mills, gins, and all personal property attached thereto in some solvent fire insurance company, and to keep the same insured for fifteen hundred dollars, or an amount sufficient to cover the amount that may be due on both of the notes herein described, but in no event to exceed fifteen hundred dollars, for the benefit and protection of Thomas Parker or the owner of said notes until both of said notes shall be fully paid off and discharged."

In accordance with this agreement insurance to the extent of fifteen hundred dollars was secured by the purchaser, and the policies contained the stipulation that "loss, if any, payable to Thomas Parker as his interest may appear." This was done because the notes were payable to appellant.

The property was destroyed by fire before the notes were paid, and appellant received from the insurance companies in satisfaction of the policies the sum of $1285.20, of which he appropriated $942.77 in full payment of principal and interest due on the note retained by himself, and the remainder he delivered to the purchaser of the property.

The policies of insurance were in possession of appellant or his agent, and the trust deed was to him, and there can be no pretense that he had not full knowledge of the rights of appellee.

The purchaser of the property seems to have absented himself after

having received a part of the insurance money and his whereabouts seems to have been unknown.

After the improvements on the land were destroyed by fire, appellee caused the land to be sold under the trust deed, and by this means received $178, which was all he had received on the note held and owned by him.

This action was brought by appellee to recover from appellant such proportion of the entire sum covered by the two policies as the note held by him bears to the sum of that and the note retained by appellant. The court below, however, held appellant only responsible for the sum collected by him on the policies and rendered a judgment against him for $685.65. There is no complaint that this sum added to the sum appellee received from the sale of the land under the trust deed would amount to more than the pro rata to which appellee would be entitled from the money collected by appellant on the policies, if entitled at all, but it is claimed that appellant was entitled to have the note held by him wholly paid out of the insurance money collected and that the purchaser of the land was entitled to the balance, or at least that appellant was under no obligation to see that any part of the insurance collected by him went to discharge in part the note held by appellee. In neither of these proposition can we concur.

Appellant by the terms of the contract between himself, appellee, and the purchaser of the land had a prior right to payment out of the proceeds of the land sold if under the deed of trust, but this was the extent of his priority, for it does not follow because he had priority of right to payment out of one fund that he would have out of another.

Appellant was content with the security which the trust deed executed by the purchaser gave for the payment of the note held by him, which, with the cash payment made to him, discharged the former indebtedness of appellee.

Appellee, however, desired some further security than the land gave, and to this end insisted upon and obtained an agreement that the purchaser would keep the property insured.

If we look to the terms of the policies only it might be claimed that appellee had no interest in them, and that after the note held by appellant was paid the purchaser who took out the policies would be entitled to the balance.

The policies having been taken out in the name of the purchaser of the land and "payable to Thomas Parker as his interest may appear," the insurance companies were justified in making settlement with appellant and the person to whom the policy was issued, in the absence of knowledge of the right of appellee.

As between appellant, appellee, and the purchaser, however, the pro-

visions contained in the deed of trust fix their respective rights under the policies obtained.

That instrument bound the purchaser to maintain fifteen hundred dollars insurance on the property "to cover the amount that may be due on both notes, * * * for the benefit and protection of Thomas Parker or the owner of said notes."

Appellant might have been given prior right to payment of the note held by him out of money falling due under policies to be taken out, as was he given such right as to funds to be derived from the sale of the property, but this was not the contract of the parties; and as the contract stands it was the right of appellant and appellee only to pro rata payment out of funds arising from insurance.

Under the contract appellee had, as owner and holder of one of the notes for the protection of which the insurance was required, at least an equitable lien on any fund paid on loss caused by the policies taken out in compliance with the contract.

All the facts were known to appellant; he had possession of the trust deed and of the policies, collected the latter, and without right appropriated more than he was entitled to to his own use, and the balance paid to a person not entitled to it.

Under this state of facts he must be held liable to appellee, and the judgment will be affirmed.

*Affirmed.*

Delivered May 3, 1889.