CARLIN v. FREY et al.

(Supreme Court, Appellate Division, Third Department.    May 7, 1913.)

1. CONTRACTS (§ 318*)—RELEASE—VIOLATION OF PROMISE.

The violation by one party to a contract involving a mutual promise of the terms of the contract releases the other party therefrom.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 318.*]

2. CONTRACTS (§ 318*)—PERFORMANCE OF CONTRACT—DISCHARGE OF OTHER PARTIES.

Defendant O. agreed to sell nine lots to defendant F., the latter to erect houses thereon and give O. a second mortgage, a house to be erected on the lot actually transferred by October 1, 1910, and F. to keep the taxes and interest on all mortgages paid and build a house on each lot. On September 1, 1911, when the insurance money on the one house partially built, but burned, was paid to the first mortgagee, the taxes had not been paid, and interest was due on the second mortgage, and an arrears of interest on the first mortgage of $125. *Held* that, even if O. agreed to permit successive houses to be rebuilt in case of fire, he was released from such agreement by F.'s breach of contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 318.*]

3. INSURANCE (§ 581*)—RIGHTS OF PARTIES.

An assignee of a first mortgage, who, contrary to the terms of a policy on the mortgaged property, turned the proceeds over to the mortgagor for rebuilding, with knowledge of the rights of a second mortgagee and vendor to have such sum applied to the mortgage debt, made herself liable for the amount so turned over.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1444–1447; Dec. Dig. § 581.*]

Appeal from Special Term, Broome County.

Action by Jannette Carlin against Henry E. Frey and others. From a judgment for defendant Orton, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Fremont F. Williams, of Binghamton, for appellant.
W. J. & F. W. Welsh, of Binghamton, for respondent.

HOWARD, J.    The defendant Orton owned certain vacant lots in Binghamton. On April 8, 1910, he entered into a written contract with the defendant Frey, whereby Orton agreed to sell nine lots to Frey at certain fixed prices (the prices being different on the different lots), to take back a purchase-money mortgage on each lot, and to permit Frey to give a mortgage on each lot for $2,500 to the defendant Lestershire Lumber & Box Company, Orton's mortgage to be second to the Lumber Company mortgage. Frey agreed to purchase the lots on these conditions, to erect a double dwelling house worth at least $2,900 on each lot, to have each house completed on or before October 1, 1910, to pay all taxes on the property, to pay the interest as it became due on each mortgage, and to have the buildings insured, the loss in case of fire payable first to the Lumber Company mortgage, sec-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ond to the Orton mortgage. Orton did deed one of the lots, the one in question, to Frey on April 8, 1910. Frey gave the purchase-money mortgage to Orton. He also gave a $2,500 mortgage to the Lumber Company. The Lumber Company assigned it to the plaintiff. Frey partly erected a house upon the lot. He caused it to be insured. May 31, 1911, the house burned. September 1, 1911, the loss was adjusted at $2,530.06, and that amount of money paid to the plaintiff, of which she paid $30 to Orton. She tried to get Orton to permit her to give the $2,500 to Frey with which to rebuild, but Orton refused, and then, without his consent, and knowing the contents of the agreement between Orton and Frey, she did give Frey $2,500, and he used it in rebuilding.

A judgment of foreclosure has been entered, the property has been sold, and, in distributing the money, the question arises here: Did the plaintiff have a right, as between herself and Orton, to give the $2,500 insurance money to Frey to enable him to rebuild, or should she have applied it in reducing the amount of her mortgage? I concur in the conclusion reached by the trial judge and in the process of reasoning by which he reached it. A few additional observations, however may not be out of place. •

[1] In a contract, wherein there are mutual promises, dependent the one upon the performance of the other, the violation by one party of the terms of the contract on his part releases the other party from the conditions to which he is bound; that is, one party cannot fail or refuse to perform the substantial promises in such a contract on his part, and then hold the other party to his promises.

[2] Orton agreed to sell his lots to Frey upon the supposition and upon the arrangement that Frey, by building upon them, would make them more valuable. He consented to take a second mortgage on the lot in question upon the understanding and agreement that Frey should have a building erected and completed on the lot by October 1, 1910; that he should keep the taxes and interest fully paid up, the interest on Orton's mortgage, as well as upon the first mortgage; that Frey should build houses upon each of the nine lots, it being the thought, undoubtedly, that each building would in some degree enhance the value of the others. On September 1, 1911, at the time the insurance money was paid, nearly a year beyond the time when the house was to have been completed, there was no house completed, either upon the lot in question or upon any of the other lots. No taxes at all had been paid, but they were accumulating against the property. No interest on the first mortgage since November 1, 1910, had been paid; the accumulation of such interest amounting to $125. No interest on Orton's mortgage had been paid. The first mortgage was rapidly growing larger, and Orton's mortgage rapidly growing correspondingly smaller and less secure. It was only a matter of two or three years, at this rate of deterioration, when Orton's mortage would be extinct. In short, it was perfectly apparent to Orton on September 1, 1911, and it must have been likewise perfectly apparent to the plaintiff, that Frey had made a total failure of his venture.

Under these circumstances, Frey's failure to perform the conditions of the contract on his part working such swift and substantial harm

to Orton's rights, Orton was absolutely released from all his obligations under the contract. Not even in the contract did Orton bind himself to permit successive houses to be rebuilt in case of fire; but, even if such construction could fairly be placed upon the contract, Orton was fully released from it by the conditions presenting themselves September 1, 1911. It was his right and his duty to protect his second mortgage by insisting upon a distribution of the insurance money according to the conditions of the policy. To have done otherwise would have been to permit the first mortgage to swallow up the second.

[3] No written condition of any contract gave the plaintiff the right to turn the insurance money over to Frey; on the contrary, the insurance policy forbade her to do so, and commanded her to apply it first upon her mortgage, and then upon Orton's mortgage. With her eyes wide open, knowing of Orton's equities and of Frey's failures, she deliberately violated the conditions of the policy and took her chances in defiance of Orton's refusal and heedless of Orton's rights. There is no excuse for her position; no equity in her contention.

The judgment should be affirmed, with costs. All concur.