## HARTFORD FIRE INS. CO. v. EVANS.
### (No. 2182.)

(Court of Civil Appeals of Texas. Amarillo.
Oct. 10, 1923. Rehearing Denied
Nov. 14, 1923.)

**1. Insurance ⬅115(3)—Cotton gin operator holding compress tickets could insure cotton for benefit of himself and owner.**

Cotton gin operator who stored cotton owned by other person with compress company and held the compress tickets had an insurable interest in the cotton entitling him to insure it in his own name for the benefit of himself and the beneficial owner.

**2. Insurance ⬅646(1)—Owner of cotton suing on blanket policy in gin operator's name had burden of proving coverage.**

In action by owner of cotton on fire policy issued in name of gin operator on cotton owned or held by him "in trust or on commission, or on joint account with others, or sold but not delivered while contained in compress and open yards adjoining," owner had burden of showing that his cotton was covered by the insurance at the time of the fire.

**3. Insurance ⬅146(3)—Doubt as to meaning of terms in policy resolved against insurer.**

Doubt as to the meaning of any of the terms in fire policy should be resolved against the insurer.

**4. Insurance ⬅164(2)—Blanket fire policy issued to cotton gin operator held to cover cotton in compress, notwithstanding delivery of compress tickets to owner.**

Blanket fire policy issued to cotton gin operator on cotton owned or held by him "in trust or on commission, or on joint account with others, or sold but not delivered while contained in compress and open yards adjoining," and providing that "tickets, checks, or receipts for cotton delivered to bearer shall not be full evidence of ownership but must be verified by written delivery order and transfer on books," *held* to cover cotton in compress at time of fire, though gin operator had delivered compress tickets to owner, where ownership thereof had not been transferred on the books of the compress company.

**5. Insurance ⬅114—Rule requiring insurable interest founded on public policy.**

The principle prohibiting insurance in favor of one having no insurable interest therein is one of public policy.

**6. Insurance ⬅115(3) — Provision of cotton gin operator's blanket policy making policy cover cotton until transfer of ownership on books of compress company held not against public policy.**

Provision of blanket fire policy issued to cotton gin operator, making policy continue in force as to cotton placed in compress by operator, notwithstanding transfer of compress tickets to owner, until transfer of ownership on books of compress company, *held* not against public policy.

**7. Insurance ⬅624(1)—Cotton gin operator could sue on blanket policy without joining owners.**

Cotton gin operator could sue on blanket fire policy covering cotton in his possession owned by others and recover the entire proceeds without joining the owners of the cotton.

**8. Insurance ⬅582—Fire insurance company justified in making adjustment with person to whom policy is made payable.**

Ordinarily, a fire insurance company is justified in making adjustment of loss with person to whom policy was made payable.

**9. Insurance ⬅582—One who takes insurance on property in his possession owned by others and collects proceeds is liable to beneficiaries.**

One who takes out insurance in his own name on property in his possession owned by others, and makes adjustment of loss and collects the proceeds without payment to beneficiaries of their interest therein, is liable to them for the loss sustained.

**10. Insurance ⬅579—Fire insurance company held liable to owner of cotton covered by blanket policy issued to cotton gin operator, notwithstanding settlement with operator.**

Where fire insurance company made settlement with cotton gin operator to whom blanket policy covering cotton held in trust for others had been issued, with knowledge that the rights of owner of cotton covered by policy were being disregarded in the settlement, the company was liable to owner of such cotton for loss sustained, where such loss and amount paid operator did not exceed face of policy.

**11. Action ⬅53(3)—Beneficial owners of cotton covered by blanket policy issued to cotton gin operator could not bring separate suits on the policy.**

Fire insurance company, which issued blanket policy to cotton gin operator covering cotton in operator's possession owned by others, could not be subjected to separate suits by the beneficial owners of the cotton.

**12. Insurance ⬅624(7) — Owner of cotton could sue on gin operator's blanket policy without joining operator with whom insurer had settled.**

Owner of cotton covered by blanket policy issued to cotton gin operator could bring an action against the insurer on the policy with-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

out joining the operator, following a settlement between the insurer and the operator disregarding the rights of such owner, where the amount paid in settlement deducted from the face of the policy left an amount more than sufficient to cover the loss on such owner's property.

**13. Evidence ☞498½—Qualification of witness to give opinion testimony within discretion of court.**

The qualification of a witness to give opinion testimony is largely within the discretion of the trial court.

Appeal from Wichita County Court; Guy Rogers, Judge.

Suit by W. T. Evans against the Hartford Fire Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for appellant.

Taylor & Taylor, of Wichita Falls, for appellee.

BOYCE, J. We have been convinced that one conclusion of fact, made the basis of our original disposition of this case, is not sustained by the record. The original opinion will be withdrawn and the case disposed of in accordance with what we shall say in this opinion on motion for rehearing.

W. T. Evans brought this suit against the Hartford Fire Insurance Company on two policies issued by it, whereby it insured, in the sum of $20,000, one J. B. Jamison against loss or damage by fire on "cotton in bales owned or held by the assured in trust or on commission, or on joint account with others or sold but not delivered while contained in compress and open yards adjoining." Plaintiff owned several bales of cotton which had been ginned by Jamison, and which Jamison stored thereafter with the Northwestern Compress Company, which is the compress company referred to in the insurance policy. The compress company issued and delivered to Jamison separate receipts or tickets for each bale of such cotton. The following is a copy of one of these tickets:

"No. 371.   W. T. Evans.
"Wichita Falls, Texas.
"February 28, 1920.

"One Bale Cotton.

"For account J. B. Jamison. Will be delivered to the holder hereof on return of this receipt and payment of all charges. Not responsible for loss or damage, fire, flood or other agencies unless caused by the willful act or gross negligence of this company."

It was Jamison's custom to insure cotton owned by him and his customers and stored with the compress company, as were these seven bales, and to collect pro rata insurance charges from his customers in settlement with them. Jamison had handled cotton in this way for a number of years, and plaintiff had requested Jamison to keep the cotton insured. A few days before the fire, plaintiff called on Jamison for the compress tickets for these seven bales of cotton and the samples, informing Jamison that he wanted to sell the cotton and would have to have the tickets. Jamison delivered the tickets to the plaintiff, but did not deliver the samples, at the time informing plaintiff that the insurance covered the cotton only so long as the tickets were in his (Jamison's) hands, and requested Evans, if he did not sell the cotton, to return the tickets. The cotton was destroyed by fire while the compress tickets were held by plaintiff. Jamison made proof of loss and settled with the insurance company for the sum of $17,866.16. In this settlement no account was taken of plaintiff's seven bales of cotton, the insurance company and Jamison taking the position that the policy did not cover the cotton after the delivery of the compress tickets to plaintiff. The insurance company knew that plaintiff claimed that his cotton was within the terms of the policy. At the time of the settlement, Jamison executed a release to the insurance company, acknowledging receipt of the said sum of money, "in full satisfaction, final settlement and compromise of all claims and demands against the insurance company for loss and damages under the policy."

The company pleaded this release in bar of plaintiff's suit. The plaintiff, by supplemental petition, alleged that no part of the loss was paid to him or any one representing him, and by trial amendment alleged that the insurance company knew that Jamison took out the insurance in his own name for the use and benefit of his customers and as trustee for them and knew of plaintiff's interest therein.

The trial court gave the jury a peremptory instruction to find for the plaintiff.

There are two principal questions touching the merits of the case raised on appeal: (1) Whether plaintiff's cotton was covered by the insurance policy at all; (2) as to the effect of the settlement by Jamison on plaintiff's rights.

[1, 2] The beneficial ownership of the cotton was at all times in the plaintiff; but Jamison, as holder of the compress tickets, had the right of possession and, so long as he retained them, was holding the property in trust under the terms of the policy, and no doubt had such an insurable interest therein as that he might insure it in his own name for the benefit of himself and the beneficial owner. Southern Cold Storage Co. v. Dechman (Tex. Civ. App.) 73 S. W. 545; Cooley's Briefs on the Law of Insurance, pp

770–774 and 3692–3694. But when Jamison delivered the compress tickets to the plaintiff, he had thereafter neither actual nor symbolic possession of the property. The plaintiff then had both the beneficial ownership and the symbols of actual possession. As between the parties, there had then been a complete delivery of the cotton to plaintiff, so if there is no other controlling provision in the policy, aside from those already referred to, we would say that the property was not, after the delivery of the compress tickets to plaintiff, further covered by the insurance policy. That policy did not cover specific property; it was a blanket policy, covering property of a certain class, the actual property subject to insurance changing from day to day as Jamison bought and sold cotton and received and delivered cotton, with reference to which he held the relation of bailee or trustee. But the appellee contends that the following clause of the policy, in connection with the provision already referred to, is sufficient to continue the insurance as to this cotton, notwithstanding the delivery of the compress receipts to plaintiff:

"It is understood and agreed to be a condition of this insurance that only actual payment by cash, check or otherwise, together with the passing of a written delivery order and a transfer to purchaser, made on the books to be kept for that purpose by the management of the compress, warehouse or yard where said cotton is stored, shall constitute delivery of cotton purchased from seller to buyer; and it is further agreed that tickets, checks or receipts for cotton deliverable to bearer shall not be full evidence of ownership but must be verified by written delivery order and transfer on books, as hereinbefore provided."

Appellee asserted in his briefs, submitted on original hearing, that the record showed conclusively that no transfer of cotton to plaintiff was made on the books of the compress company, and we disposed of the case on the assumption that this statement was correct. Appellant's motion for rehearing challenges this conclusion, and we find on examination of the record that it is silent as to such matter. It therefore appears that the plaintiff failed to discharge the burden of showing that his cotton was covered by the insurance at the time of the fire, and the judgment must be, for this reason, reversed.

In view of another trial, however, and appellant's insistence that even if there had been no transfer on the books of the compress company, nevertheless the policy would not cover the cotton, it becomes necessary to announce our conclusion as to such question.

[3, 4] The first part of the provision quoted is obviously not applicable here, because it has reference to delivery from seller to buyer. The latter part is general, and it may be doubtful whether it is limited by the context to application only as between buyer and seller. The insurance company was evidently attempting to prescribe limitations as to the time when cotton would come within the protection of the policy, but the clause is also pertinent in determining when the property passed without its protection. Doubt as to the meaning of any of the terms should be resolved against the insurance company. Fidelity Union Insurance Co. v. Mitchell (Tex. Civ. App.) 249 S. W. 536. We therefore hold that the provision quoted is applicable to the facts of this case, if there had been no transfer of the cotton on the books of the compress company, and proceed to consider what would then be the liability of the insurance company for the loss.

[5, 6] The case of Waring v. Indemnity Trust Co., 45 N. Y. 606, 6 Am. Rep. 146, is the nearest in point of any authority we have been able to find on this question. In that case the insurance company insured Waring & Co., commission merchants, against loss or damage by fire to carbon oil belonging to them "or held in trust on commission, or sold but not removed, contained in bonded warehouse." Waring & Co. sold certain of the oil which was stored with the United States bonded warehouse. They received their pay and delivered to the purchaser invoices and gaugers' certificates, so that as between the parties there was a complete delivery of the oil to the purchaser. The property was then destroyed by fire before removal by the purchaser from the warehouse, and it was held that it fell within the terms of the policy; that Waring & Co. having originally had an insurable interest in the property might provide for protection of their customers until the property came into their actual possession, even at a time when Waring & Co. had ceased to have any actual interest in it. See, also, Lockhart v. Cooper, 87 N. C. 149, 42 Am. Rep. 515. The clause of the policy above referred to, applied to the facts of this case, makes very much the same case as that decided by the New York court. Jamison had taken out the insurance for the benefit of himself and the plaintiff. The plaintiff was paying his pro rata part of the insurance. The policy, by express terms, as we have construed them, provided that it should continue in force until there was a transfer from Jamison on the books of the compress company. It does not appear but that plaintiff actually paid Jamison for insurance covering the period of time during which this loss occurred; there had evidently been no settlement between Jamison and the plaintiff at the time of the fire. The principle prohibiting insurance in favor of one having no insurable interest therein is one of public policy. We can conceive of no reason founded on public policy that would prevent the continuance in force of this insurance until such time as by the express

terms of the policy it passed from under its protection.

[7-10] We pass to the consideration of the second question, to wit: The effect of the settlement by Jamison on plaintiff's rights. The policy being in Jamison's name and the loss payable to him, he would have had the right to sue in his own name and recover the entire proceeds of the policy without the necessity of joining others, such as plaintiff in this case, who might have had an equitable interest in such proceeds. Southern Cold Storage Co. v. Dechman (Tex. Civ. App.) 73 S. W. 545; Allison v. Phœnix Insurance Co., 87 Tex. 593, 30 S. W. 547; Strohn v. Hartford Fire Insurance Co., 33 Wis. 657–659. Ordinarily, also, the insurance company would be justified in dealing with the person to whom the policy was made payable and protected in any adjustment of loss under the policy made with such person. Parker v. Ross, 73 Tex. 633, 11 S. W. 865. If such person should fail in his duty to the beneficiaries in the matter of the collection of the insurance, he would, himself, be liable to them for the loss sustained on such account. Southern Cold Storage Company v. Dechman, supra; Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N. W. 395, 68 L. R. A. 934, 107 Am. St. Rep. 995; Cooley's Briefs on the Law of Insurance, p. 3692. We think it true, also, that if the insurance company knew of the rights of the beneficial owner and that they were being disregarded in the settlement, then such settlement would not protect it against the claim of such beneficiary. Parker v. Ross, supra; Duckett v. National Mechanics' Bank, 86 Md. 400, 38 Atl. 983, 39 L. R. A. 86, 63 Am. St. Rep. 513; Perry v. Oerman, 63 W. Va. 566, 60 S. E. 604, 15 L. R. A. (N. S.) 310, 129 Am. St. Rep. 1020; Mechem on Agency, § 2137. The insurance company, in such case, would be a participant with the trustee in the breach of his duty to the beneficiaries. It reaped the benefit of such breach of duty, and under the authorities, would be, we think, liable to the beneficiary to the same extent as the trustee.

[11, 12] The insurance company could not be forced to be subjected to separate suits by beneficial owners of parts of the insured property. Cleveland v. Heidenheimer, 92 Tex. 108, 46 S. W. 31; T. W. Ry. Co. v. Gentry, 69 Tex. 625, 8 S. W. 98; Gutman v. Rogers (City Ct. N. Y.) 13 N. Y. Supp. 576; 20 R. C. L. 665. And in any ordinary case we take it that the owners or representatives of all legal and equitable interests would be required to be made parties to any suit that a part owner might institute to secure his rights under the policy. But the facts of this case, we think, dispense with the necessity of making Jamison, who would have represented his own and all other interests in the property, a party to this suit, since the defendant, by its own showing, has settled with Jamison, and it thus appears that the plaintiff is the owner of the only unsatisfied claim on the policy. The amount paid in settlement deducted from the face of the policy leaves an amount more than sufficient to cover the loss on plaintiff's property, which was not taken into account in the settlement. No question as to parties has been raised, but we make this statement in view of the fact that what we have heretofore said would naturally suggest the question.

[13] The proposition presenting objection to the testimony of the witness H. T. Evans, who testified as to the grade of the cotton, is overruled. The decision as to the qualification of one proposing to give opinion testimony is largely within the discretion of the trial court, and we find no abuse of that discretion in this instance.

Other questions presented are not likely to arise on another trial, and we need not discuss them.

Reversed and remanded.