Don H. WALTON et ux., Appellants,

v.

GENERAL AMERICAN LIFE INSUR-ANCE COMPANY, Appellee.

No. 14286.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 14, 1964.

Rehearing Denied Nov. 12, 1964.

Dobbins & Howard, San Antonio, for appellants.

Samuel L. Egger, San Antonio, for appellee.

BARROW, Justice.

Appellants, Don H. Walton and wife, Patricia Fuller Walton, mortgagors, brought this suit against appellee, General American Life Insurance Company, mortgagee, to recover the amount paid by a casualty insurance carrier for windstorm damage on the home which had been sold by appellants to Billy Thomas and wife.

Appellants purchased the property in 1955, and in payment therefor gave mortgagee a note in the amount of $21,500, secured by a vendor's lien and deed of trust. Appellants sold the property in 1959 to Thomas, who expressly assumed payment of the original note and gave appellants another note in the amount of $12,072.83, secured by a junior deed of trust. Appellee was not a party to the contract between Thomas and appellants. In July, 1961, Thomas asserted two claims for windstorm damage under a casualty insurance policy, and on September 1, 1961, received two drafts totalling $1,273.00 in settlement of these claims. Mortgagee had no knowledge of the windstorm damage to the home and made no independent investigation of either the damage or repairs to the house. The casualty insurance carrier had made the drafts payable to the order of "Billy Thomas, Billie Thomas and General American Life Insurance Company." Mrs. Thomas brought the drafts to mortgagee and it requested her to execute affidavits that all repairs had been made and paid for by Thomas. Mortgagee then endorsed and delivered the drafts to Mrs. Thomas. Shortly thereafter, Thomas defaulted on both notes and appellants paid off the original note to mortgagee.

Appellants urge that mortgagee was required under the original deed of trust, to either credit the insurance proceeds on the original note or see that all were used in repair of the windstorm damage. Appellants further assert that they had an equitable lien on the proceeds as mortgagees under the junior deed of trust. A take-nothing judgment was entered after a non-jury trial.

Formal findings of fact and conclusions of law were not requested, however, the judgment contains three findings: "1. The covenants in the deed of trust are between the Mortgagor and the Mortgagee, and are in favor of the Mortgagee, and accordingly, would not extend to one not a party to the contract. 2. That the lender could waive at any time any of said covenants. 3. (Stricken from the judgment on motion of appellants.) 4. That the plaintiff does have a true cause of action against the owner of the property, and may assert a right of action against the insurance company."

The original deed of trust provided that as additional security for the indebtedness, mortgagors would keep the property insured as required by mortgagee with any loss payable to the mortgagee, as its interests might appear. Mortgagors were required to maintain an escrow fund with mortgagee to pay the insurance premiums on the casualty insurance policy which would be kept by mortgagee. The deed of trust provided that in the event of a loss, the sums collected under said insurance policy, or any part thereof, "at the option of the Company (Mortgagee) may be applied as payment on the indebtedness hereby secured, or to the restoration or repair of the property so destroyed or damaged."

The junior deed of trust executed by the Thomases to secure payment of their own note to appellants also contained a clause requiring Thomas to insure the property to secure the indebtedness owed appellants.

with a loss payable clause substantially similar to that in the original deed of trust.

A casualty insurance policy providing windstorm coverage was issued on April 8, 1960, on behalf of Thomas and paid for from the escrow fund. The original of this policy was kept in the home office of mortgagee at St. Louis, Missouri. Although the policy provided that any loss should be payable to mortgagee and appellants "as their interest may appear at time of loss," appellants' names were not on the drafts given Thomas.

The original deed of trust expressly authorized mortgagee, at its sole option to permit the use of the insurance proceeds in repair or restoration of the damage. Mortgagee relied on the affidavit of Mrs. Thomas that all repairs necessary to restore the property to as good condition as immediately prior to said loss had been made and paid for by Thomas. Appellants urge that mortgagee was negligent in delivering the proceeds to Mrs. Thomas in view of the poor payment record of Thomas. Thomas was late with every note payment and at the time the drafts were presented, he had not paid the July, August or September payments. Mrs. Thomas on this occasion gave mortgagee a check for the July and August payments, but the check was returned for insufficient funds. The trial judge, however, heard all the evidence and, by his judgment, impliedly found no negligence on the part of mortgagee.

Appellants urge that mortgagee is liable as a matter of law for any diversion of the insurance proceeds, and as authority for this proposition cite Conn. Mutual Life Ins. Co. v. Scammon, 117 U.S. 634, 6 S.Ct. 889, 29 L.Ed. 1007. It was there held that the mortgagee took the risk of the diversion where, contrary to the provisions of the deed of trust and without the consent of two of the mortgagors, he delivered the insurance proceeds to the third mortgagor for the purpose of rebuilding the burned premises. The deed of trust there provided that the insurance was collateral security for the joint debt and that mortgagee was required to apply the proceeds in event of loss to payment of the debt. Where the third mortgagor did not apply the proceeds in rebuilding the property, the other two mortgagors were entitled to have the amount credited on the debt. See also, Carlin v. Frey, 157 App.Div. 84, 141 N.Y.S. 580; 59 C.J.S. Mortgages § 328.

■ The rule is contrary where, as in our case, the insurance proceeds are delivered to the owner by the mortgagee in accordance with the terms of the deed of trust. In this situation the second mortgagee cannot complain since he took subject to the first mortgage with all its provisions. Meltzer v. Blumberg, 133 Misc. 233, 231 N.Y.S. 513.

■ The deed of trust executed by appellants gave mortgagee the option of applying the insurance proceeds upon the debt or in repair of the premises. Mortgagee agreed to the latter option. We cannot say, as a matter of law, that mortgagee was negligent in delivering the proceeds to Mrs. Thomas after she executed affidavits that all repairs had been made and the property was restored to the condition it was in immediately prior to the windstorms

Appellants assert that they were entitled to the insurance proceeds as mortgagees under the junior deed of trust executed by Thomas. Appellants did not attempt to prove the amount of the windstorm damage before or after the repairs by Thomas. The proof of loss submitted to the casualty insurance carrier by Thomas was offered in evidence only for a limited purpose and not as proof of the damage. Appellants did not see the property until about six months after the windstorm claims were paid. Appellants testified that at this time the property showed vandalism damage, and a claim for this damage was asserted by appellants and paid by the casualty insurance carrier. There was therefore no showing that the mortgaged property was of less value be-

cause of the asserted diversion of the insurance proceeds.

■■ A mortgagee would be bound to pay to the junior mortgagee any proceeds remaining after discharge of the original note. Parker v. Ross, 73 Tex. 633, 11 S.W. 865. Here the proceeds were substantially less than the amount owed to mortgagee and therefore mortgagee properly used the proceeds for repair of the property as authorized by the deed of trust.

The judgment is affirmed.