LILLIAN J. WASHBURN vs. UNITED STATES CASUALTY COMPANY.

Somerset.    Opinion February 25, 1910.

*Insurance.   Accident Policies.   Renewal.   Acts of Agent.   Contracts.   Evidence.*
*Revised Statutes, chapter 49, section 93.*

Under Revised Statutes, chapter 49, section 93, providing that a duly
appointed insurance agent shall be regarded as in the place of the insur-
ance company in all respects regarding any insurance effected by him,
*held* that a letter written by such an agent acknowledging the receipt of a
proof of loss and renewal agreement under an accident policy, bound the
company, and the fact that the agent was forbidden by the company to
make any agreement in relation to the matter after the death of the
insured was wholly immaterial.

Where an insurance agent had had charge of all the insured's insurance
business for several years, under directions not to let a policy expire unless
told to do so, and under an arrangement whereby the insured paid the
premiums only on presentation of bills therefor, and the agent had a pigeon
hole in his safe devoted to the exclusive custody of the insured's papers,
*held* that there was a valid renewal of an accident policy by the agent
attaching a renewal receipt to the original policy, charging the renewal
premium to the insured, and crediting the insurance company with the
amount.

The contract of insurance is to be tested by the principles applicable to the
making of contracts in general.

On exceptions by plaintiff.    Sustained.

Action of assumpsit upon an accident insurance policy issued to
Henry Washburn, by the terms of which the defendant became
liable to pay to the plaintiff as beneficiary the sum of $5000 in
event of the death of the insured resulting from "bodily injury
effected by external, violent and accidental means."    Plea, the
general issue with brief statement alleging that the policy was not
in force at the time of the death of said Washburn, that the repre-
sentations and warranties in the schedule of statements in said
Washburn's application for insurance were false, etc., etc.    The
plaintiff filed a replication to the defendant's brief statement.

At the conclusion of the evidence for the plaintiff, the presiding Justice ordered a nonsuit and the plaintiff excepted.

The case is stated in the opinion.

*George W. Gower, and Turner Buswell,* for plaintiff.

*Merrill & Merrill,* for defendant.

SITTING : WHITEHOUSE, PEABODY, SPEAR, CORNISH, BIRD, JJ.

WHITEHOUSE, J.   This is an action of assumpsit upon an accident insurance policy issued to Henry Washburn, by the terms of which the defendant became liable to pay to the plaintiff as beneficiary the sum of $5000 in the event of the death of the insured resulting from "bodily injury effected by external, violent and accidental means."   The insured came to his death on the 21st day of February, 1908, as the result of such a bodily injury sustained on the 19th of the same month, and in this action the plaintiff seeks to recover the amount of the indemnity for the loss of the life of the insured, as stipulated in the policy.   At the close of the evidence for the plaintiff, the presiding Justice directed a nonsuit and the case comes to the Law Court on exceptions to this ruling.

The liability of the defendant under the original policy commenced January 16, 1907, and terminated January 16, 1908, a month before the death of the insured, unless the policy had been renewed.   The plaintiff claims that the policy had been renewed according to the regulations and practice of the company and the established course of business between its agent and the insured. The defendant contends that no valid contract of renewal had been made.   Thus the real question involved in the exceptions and argued by counsel is whether the policy was in force at the time of the accident.

The original policy was issued to Mr. Washburn upon the solicitation of John C. Griffin of Skowhegan, who at that time and at the time of the trial, and for ten years prior thereto, was the general agent of the company in the State of Maine.   Mr. Griffin was called as a witness for the plaintiff in this case and testified fully in regard to all of the facts and circumstances connected with

the issuing of the original policy and its renewal and his method of dealing with Mr. Washburn in the transaction of insurance business at that time. In consideration of the force and effect of his testimony and the significance to be attached to his attitude in the matter, it is proper to be reminded that by section 93 of chapter 49, R. S., duly appointed insurance agents in this State "shall be regarded as in the place of the company in all respects in regard to any insurance effected by them."

It satisfactorily appears from the testimony of Mr. Griffin, the defendant's general agent, and from the documentary evidence in the case, that for "ten or fifteen years prior to the date of the policy in suit, Mr. Griffin had been entrusted with the absolute charge of Mr. Washburn's insurance business, and for that purpose had a pigeon hole in his safe devoted to the exclusive custody of Mr. Washburn's papers. All of his insurance policies were deposited and kept in that pigeon hole and nothing else was kept there. He never was required to pay cash for a policy but paid the premium only on presentation of a bill therefor, a reasonable time after the policy had been deposited in the pigeon hole. Mr. Griffin further states that he had "explicit instructions" from Mr. Washburn "never to let a policy expire unless he was told to" and that under this general instruction all of his policies had been renewed. It is true that prior to January 16, 1907, the date of the life and accident policy in question, all of the policies taken out by Mr. Washburn had been for fire insurance, but the original life and accident policy here in question was issued and deposited in the same pigeon hole, without the payment of any cash at the time, and the premium actually paid on presentation of a bill therefor seven months afterward, in pursuance of the same course of business that had been observed in respect to the fire insurance policies. At the time of depositing the original policy in the pigeon hole, Mr. Griffin charged the premium to Mr. Washburn and gave the company credit for the amount, and he testifies that he understood that the deposit of the policy in the pigeon hole used exclusively for Mr. Washburn was a delivery of the policy to Mr. Washburn and that from that moment there was a valid contract of insurance. Indeed it is not

controverted by the defendant that this transaction constituted a valid contract of insurance under the original policy from January 16, 1907, and would have been binding upon the defendant company in the event of the death of the insured before the actual payment of the premium by him.   But the question now is whether this policy of insurance was in force at the time of the accident, February 19, 1908.   The plaintiff contends that the original policy had been renewed according to the established rules and usages of the company and the previous course of business with the insured. About a month before January 16, 1908, the date fixed for the expiration of the term of one year named in the original policy, according to the uniform custom, Mr. Griffin received from the company a renewal receipt to continue the policy in force another year.   Before the expiration of the policy Mr. Griffin duly countersigned this renewal receipt and attached it to the policy then in Mr. Washburn's pigeon hole in the safe, and on January 16, 1908, charged the renewal premium of $25 to Washburn and credited the amount to the company, and also attached a copy of it to his policy register.   It is not in controversy that Mr. Griffin understood by the "explicit instructions" from Washburn never to let a policy expire unless told to," he had the same authority to renew the policy in question that he had to renew fire insurance policies.   Mr. Washburn was presumed to know when his policy would expire.   He knew what instructions had been given by him respecting the renewal of his policies, and he knew that those instructions had not been countermanded.   It is a reasonable inference that he expected the policy to be renewed.   Mr. Griffin understood that he was expected to renew it, and from the whole tenor of his evidence, and especially from his letter of May 12, 1908, acknowledging the receipt of the plaintiff's proof of loss, it is manifest that Mr. Griffin understood that the policy had been renewed and was in full force as a valid contract of insurance after as well as before January 16, 1908.   In the letter of May 12, above mentioned he says:   "We would acknowledge receipt of proof of loss under policy No. X 12680, and renewal agreement No. A 29650 insuring Henry Washburn of Bingham, Maine in the U. S. Casualty Company of

New York." In writing that letter he must be deemed under the statute to have been "in the place of the company in all respects regarding the insurance effected by him," and his acts and declarations in that behalf were the acts and declarations of the company. The letter was not introduced as a new and independent agreement by which the company would be bound, but as evidence of the agent's understanding of the purpose and effect of the transactions upon which the plaintiff's claim of renewal is based; and the fact that the agent was "forbidden by the company to make any agreements in relation to the matter" after the death of the insured is entirely immaterial. No instructions to the agent from the home office of the company either before or after the death of the insured, could have the effect to defeat the operation of the statute under which the agent is made to stand in the place of the company.

It is contended by the defendant, however, that the "explicit instructions" from Washburn "never to let a policy expire" must be restricted in their application to then existing insurance contracts, and that they cannot be extended to new contracts of insurance that might afterward be made. But there is nothing in the language of the instructions which calls for such a limited interpretation. They would undoubtedly have been held applicable to a new and original policy of fire insurance; and they may with equal reason be held applicable to a policy of life or accident insurance. As already shown they were unquestionably so understood and acted upon by Griffin, and in view of the course of dealing between him and Washburn and the existing situation and circumstances the language of Washburn's instructions justified Griffin in so understanding and acting.

It is undoubtedly true that "the contract of insurance is to be tested by the principles applicable to the making of contracts in general." *Clark* v. *Insurance Co.*, 89 Maine, 26 ; and that the obligation in such case is correlative. *Insurance Co.* v. *Young*, 23 Wall. 85. Measured by this test, there was a valid contract of insurance subsisting at the time of the accident. The renewal receipt to continue the policy in force another year had been received by Mr. Griffin from the home office and deposited by him in Mr.

Washburn's pigeon hole in the safe.   In so doing he dealt with this evidence of renewal precisely as he dealt with the original policy and with all other policies issued to Mr. Washburn.   He had performed his duty as agent of the defendant, and as custodian of the policies and evidences of renewal he was acting as agent and trustee of the insured.   There was no incompatibility between these separate and distinct duties.   The renewal receipt as well as the original policy was legally delivered to the insured.  *Hallock* v. *Com. Ins. Co.*, 26 N. J. Law, 268; *Hamm Realty Co.* v. *N. H. Fire Ins. Co.*, 80 Minn. 139 (83 N. W. 41); *Davis Lumber Co.* v. *Hartford F. Ins. Co.*, 95 Wis. 226 (70 N. W. 84); 22 Cyc. L & P. 1445.

A bill for the renewal premium, which had been credited to the defendant by Mr. Griffin before the original policy expired, was mailed to Mr. Washburn the day before the accident, and if he had lived to receive it, his legal obligation to pay the renewal premium would have been as clear as it was to pay the premium on the original policy.   The element of mutuality in the contract undoubtedly existed.   The opposite conclusion would be an unwarranted assumption.

The agent testifies, it is true, that if Mr. Washburn had lived and answered his letter containing the bill for the renewal premium, stating that he did not wish to have the policy renewed, he should have returned the renewal receipt to the home office, and the defendant argues that this is an admission by Mr. Griffin that he did not understand that there was a completed contract of renewal.   But such a construction of his testimony would be contrary to the whole tenor of his evidence and give his language a meaning obviously not intended by him.   It is expressly provided by the terms of the policy that it may be cancelled by the company upon notice and return of the unearned part of the premium if any; and by his contract of agency with the company, Mr. Griffin had express authority to "return to the home office within fourteen days of the date of its issue any policy refused by an applicant, in which event the agent shall receive full credit therefor; but unless the policy so refused is received at the home office within fourteen days of the date of its

issue, the agent shall pay the company the pro rata premium earned from date of issue to the date the policy is received at the home office." It will be remembered that he had for many years been entrusted with the entire charge of Mr. Washburn's insurance business, and if upon the receipt of a bill for the renewal premium Mr. Washburn had notified him that he had changed his mind and did not wish to renew this policy, he would have promptly returned the renewal receipt to the home office, not on the ground that there had been no valid renewal of the policy, but as an act of accommodation to an old and valued patron of his office. In his testimony in question he was not speaking of the legal rights of the insured, but of his own personal attitude in the matter.

The conclusion thus reached that a valid contract of renewal had been made in this case, is in conformity with the substantially uniform course of business governing the practical relations between the insurer and the insured respecting the renewal and delivery of insurance policies, and is in harmony with the previous methods of dealing that had been established between the defendant's general agent and the insured in this case. It involves a recognition of the reasonable and practical usages and methods which have long prevailed in that branch of business, and been found well calculated to do justice to all parties and injustice to none.

*Exceptions sustained.*