## CAMDEN FIRE INS. ASS'N v. SUTHER-LAND. (No. 663-4543.)

(Commission of Appeals of Texas, Section B. June 9, 1926.)

**1. Insurance ☞378(3).**

Knowledge of insurance agents having general authority to issue policies is knowledge of insurer.

**2. Insurance ☞379(1).**

Where general agent of insurer knew of insurance taken out by mortgagee and promised to ascertain facts and fill out applications accordingly, insurer could not avoid liability because of incorrectness of warranty against other insurance.

**3. Insurance ☞504, 581—Where mortgagor had duty to insure against fire in favor of mortgagee, insurance taken out and collected by mortgagee held to inure to mortgagor's benefit, and his insurer was entitled to prorate loss in accordance with three-fourths liability and additional insurance clauses.**

Where mortgagor had duty to insure against fire for protection of mortgagee, and loss payable clause of fire policy taken out by him was in favor of mortgagee, insurance taken out by mortgagee and collected by him upon destruction of property *held* to inure to benefit of mortgagor, and his insurer was entitled to prorate loss within its three-fourths liability and additional insurance clauses.

**4. Insurance ☞336(2) — Where seller, as mortgagee, insured property, buyer failing to notify seller that he had taken out other policy held estopped from asserting that he had no part in continuance of mortgagee's policy.**

Where seller insured interest in property as mortgagee, and notified buyer that if policy was not satisfactory he could take out others and first would be canceled, buyer failing to reply *held* estopped to say that he had no part in continuance of mortgagee's policy.

**5. Mortgages ☞298(3).**

Where mortgagee insures his interest in property against fire and collects thereon, mortgagor is entitled to cancellation of debt to extent of proceeds of insurance.

**6. Insurance ☞495(1).**

Clause in fire policy providing insurer shall be liable for amount not greater than three-fourths of actual cash value of property, but not exceeding amount of policy, is valid.

**7. Insurance ☞504.**

As respects effect of other insurance it is against public policy to permit profit by fire through insurance.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by W. A. Sutherland against the Camden Fire Insurance Association. Judgment for plaintiff was affirmed by the Court of Civil Appeals (278 S. W. 907), and defendant brings error. Reformed, and, as reformed, affirmed.

Senter, Strong & Tester, of Dallas, for plaintiff in error.

Lea, McGrady, Thomason & Edwards, of El Paso, for defendant in error.

POWELL, P. J. On July 2, 1924, the Murray Company of Dallas, manufacturers of cotton gins and appurtenant machinery, sold to defendant in error certain machinery of that kind, retaining a mortgage lien on the same for a large portion of the purchase money. On the date above mentioned, the sellers wrote Sutherland as follows:

"The Murray Company,
"Manufacturers of Cotton Ginning, Cotton Seed Oil Mill Machinery and Mill Supplies.
"Contracts #13850-1.
"Dallas, Texas, July 2, 1924.

"Mr. W. A. Sutherland, Las Cruces, New Mex.—Dear Sir: Shipments of machinery for Canutillo, Texas, and Vinton, Texas, as shown by the inclosed invoices and as represented by the above numbered contracts left Dallas on Jun. 30th. * * *

"Please refer to the attached letter of this date addressed to you and which is self-explanatory as to the insurance referred to therein. We have instructed Cornwall & Stevens to issue three binders each in the amounts of $7,750.00 to cover our mortgage interest in each of your three plants above referred to and to become effective when machinery ceases to be covered by bill of lading. If you desire to secure insurance direct and will furnish us with policies with loss clause in our favor, we will on receipt of acceptable policies cancel the insurance with Cornwall & Stevens as of the date your insurance becomes effective. In either event, it is necessary that we advise the insurance company as to the dates on which shipments ceased to be covered by bills of lading. Please, therefore, use the inclosed cards in giving us the information thereon desired.

"Again thanking you for these contracts and trusting shipments reach destination in due time, we are,
"Yours very truly,
"Collection Department."

Sutherland admitted receipt of this letter in due course of mail, but made no reply thereto.

On July 9, 1924, defendant in error executed a chattel mortgage, dated July 2, 1924, on this machinery and in favor of the Murray Company. The mortgage was filed for registration by the mortgagee on July 17, 1924. One of the clauses in that mortgage reads as follows:

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Until the indebtedness herein secured is paid for the said mortgagor agrees to keep the above-described property insured against loss or damage by fire to the full amount obtainable or for the amount of the indebtedness of the Murray Company in some insurance company or companies satisfactory to the trustee named or his successor, and will continue said insurance until the indebtedness herein secured is fully paid, with loss, if any, payable to the Murray Company, or to Bruce Thomas, trustee, as it or his interest may appear and deliver said policy or policies to said trustee, and in case the said mortgagor fails so to do, the said Bruce Thomas, trustee, or the Murray Company, may take out such insurance at expense of said mortgagor."

With the Lloyd's policy in the sum of $7,750 still in force, the defendant in error, on October 8, 1924, secured a policy from plaintiff in error in the sum of $10,500. Of this amount, the sum of $500 was upon cotton in the process of being ginned. That amount was paid and is no longer in suit. Of the remaining $10,000 covered by the policy in suit, the sum of $2,000 was on the one-story ironclad building, with metal roof, occupied by the cotton gin purchased as aforesaid. It is admitted that the building had an actual cash value of $4,000. The remaining $8,000 in this policy was upon the gin, appurtenant machinery, etc. It is the same property covered by the Lloyd's policy aforesaid. In other words, Sutherland had a total insurance of $15,750 against property which he claimed to have an actual total cash value of $14,000. It will be observed that, if he be permitted to recover the full amount of both policies, the fire would have been profitable to him in a substantial amount.

The policy in suit contained the following condition:

"It is agreed that any loss or damage ascertained and proven to be due the assured under the policy shall be held payable to the Murray Company as interest may appear; subject, however, to all the terms and conditions of the policy."

On December 4, 1924, the property was totally destroyed by fire. At that time both policies were in force.

It was agreed by and between the parties hereto that:

"After the destruction of the above-described gin plant by fire, Lloyd's, New York, paid to the Murray Company on the policy which was issued to it as mortgagee covering only its mortgagee interest the sum of $7,364.49, and said Murray Company released its mortgage on said property and now makes no claim under the policy sued on."

On the other hand, plaintiff in error, as per the agreement of the parties, took the following action:

"After loss plaintiff made demand on defendant during the month of December, 1924, for payment of the amount provided in said policy, to wit, $10,500, which defendant refused to pay, and on January 23, 1925, defendant denied all liability on the policy on which this suit is brought, and tendered to plaintiff its check for $220 as an offer to return the premium originally paid by plaintiff, which check plaintiff refused to accept and returned same to defendant."

In an effort to collect on the latter policy, Sutherland instituted suit in the District Court at El Paso, where judgment was rendered in his favor for $10,000, the face value of the policy, with legal interest thereon. That judgment was affirmed by the Court of Civil Appeals. See 278 S. W. 907. Sutherland gave notice of appeal from the judgment of the district court, but did not perfect it. Nor did he file any application for writ of error here. He has accepted the judgments of the lower courts.

The policy in suit contained the following provisions:

(1) "$10,500 total concurrent insurance permitted, including this policy."

(2) "This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

[1, 2] As we have already shown, Sutherland had insurance largely in excess of the concurrent insurance allowed by the policy in suit, and, under the provision last quoted, the policy in suit would be absolutely void but for the fact that the plaintiff in error had knowledge of the Lloyd's policy in such a way as to be now estopped from setting up this provision of the contract. The Court of Civil Appeals correctly decides this question, after outlining the facts, in the following language:

"The first contention that the policy is void because of false representations is answered by the proposition that appellee notified appellant's agents, who had full authority to issue the policy, as to the condition of the Lloyd's insurance, so that this agency knew as much as appellee did, and not only this, but this agency promised to ascertain the full condition of the Lloyd's policy. Therefore, under our decisions, such a contention is clearly without merit. Wagner v. Ins. Co., 92 Tex. 549, 50 S. W. 569; Morrison v. Ins. Co., 69 Tex. 353, 6 S. W. 605, 5 Am. St. Rep. 63; Ins. Co. v. Ende, 65 Tex. 123.

"Upon this phase of the case appellant strongly relies upon Insurance Co. v. Richbourg, * * * 257 S. W. 1089, by the Commission of Appeals, but that case is not in point for the reason, among others, that the local agent did not have the general authority possessed by the agents who in the present case acted for appellant with respect to the contract sued upon.

"Under the two cases first above cited, and the agreed facts as to the authority of appellant's local agents, such agents stand in the

place of the appellant itself and whatever knowledge they possessed with respect to the additional insurance was the knowledge of the appellee.

"These agents were advised by Sutherland that the Murray Company had taken out some character of insurance upon the machinery but he did not know its exact nature or whether it was still in force, and at the agent's own suggestion the application was signed in blank; the agents undertaking to ascertain the true facts and fill in the application in accordance therewith. They made no pretense of complying with their agreement to ascertain the true facts, but returned to their office and made the answers to the questions upon which the appellant now seeks to avoid the policy. In our opinion the cases cited clearly establish that under these circumstances the appellant cannot repudiate its liability under the policy by reason of the incorrectness of the representation and warranty against other insurance."

Our Supreme Court decisions cited by the Court of Civil Appeals are in point and clearly decisive of this issue. The local agents of plaintiff in error in El Paso had authority to issue and deliver the policy itself and bind the company accordingly. Therefore, under our decisions aforesaid, notice to agents with such authority is notice to the company itself. This was not the situation in the Richbourg Case mentioned by the Court of Civil Appeals and also urged by plaintiff in error.

[3, 4] Consequently, it must be held that the policy in suit was in force and effect. But we now come to a proper enforcement of the policy as written. There is one provision of the contract which we think should be considered in this connection, and such provision reads as follows:

"It is understood and agreed to be a condition of this insurance, that in the event of loss or damage by fire to the property insured under this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each such item) at the time immediately preceding such loss or damage; and in the event of additional insurance—if any is permitted hereon—then this company shall be liable for its proportion only of three-fourths of such cash value of each item insured at the time of the fire, not exceeding the amount insured on each such item."

The Court of Civil Appeals takes the view that there was no additional or other insurance within the meaning of the policy. In so ruling, it says:

"It will be noticed that the language quoted' only invalidates the policy if the 'insured' had or procures other insurance. This language cannot be extended to include a policy, taken out by a mortgagee in his own independent right as his indemnity, to which the mortgagor is in no way a party, and which can in no way inure to the benefit of the mortgagor."

284 S.W.—59

The Court of Civil Appeals then cites numerous authorities to sustain its views. We think they do sustain that court, but we are of the view that, as shown by our last quotation, the Court of Civil Appeals is entirely in error in its interpretation of the undisputed facts in this case. Therefore, we do not think the authorities cited by that court have any bearing upon this case.

It cannot, in our judgment, be said that Sutherland was in no way a party to the Lloyd's policy, nor that such policy could not in any way inure to his benefit. On the contrary, the undisputed facts in this record, already quoted by us, show conclusively that he consented to the continuance of the Lloyd's policy, thereby adopting it as his own, and that he has in fact reaped the full benefit of the payment made by the Lloyd's people.

It was the duty of Sutherland to insure this property for the benefit of the mortgagee. The latter insured it and gave notice to Sutherland. It told him if such policy was not satisfactory he could take out others, and the Lloyd's would be canceled in turn. Not having replied to such letter, Sutherland is estopped to now say he had no part in the continuance of such policy. He must have known, as an ordinarily prudent person, that such policy would continue in force until he advised to the contrary. If he had been unwilling for the mortgagee to continue the Lloyd's policy, he should have so advised them. This is clear to us and it admits of no doubt.

Again, in taking out the policy in suit, he did it for the benefit of the mortgagee, as shown by the loss payable clause attached thereto and already quoted by us. There is no question but that there were two policies upon the same identical property, and each of which was for the joint benefit of the same parties, to wit, the mortgagor and the mortgagee. In this connection, we quote as follows from a very able opinion by our Supreme Court, speaking through Justice Brown, in the case of Naquin v. Investment Association, 95 Tex. 313, 67 S. W. 85, 58 L. R. A. 711, 93 Am. St. Rep. 855:

"The insurance was not intended to provide a fund with which to pay the debt, but to furnish indemnity to both the mortgagor and the mortgagee. The object was to secure the mortgagor against being deprived of a home in case of the destruction of the house, for the fund would enable him to rebuild; and it was intended to secure him further against liability for the debt in case the destruction of the house should occur after the debt fell due. In favor of the mortgagee, the purpose was to indemnify his security upon the property; that is, it was to give additional security by providing a fund with which to discharge the debt, if overdue, or to restore the security by constructing a new building in place of that destroyed. It was not exclusively the fund of either party, but one in which they had a common interest for the accomplishment of a

common purpose. Gordon v. Savings Bank, 115 Mass. 591; Fergus v. Wilmarth, 117 Ill. 547 [7 N. E. 508]; Bryant v. Insurance Co. [C. C.] 24 F. 771; 1 Jones on Mort. § 410; 1 Biddle on Ins. § 256."

Not only was the Lloyd's insurance taken out with the consent and knowledge of Sutherland, and for the joint benefit of himself and mortgagee, but he actually received the benefit of the payment on the Lloyd's policy. The policy in suit had its loss payable clause in favor of mortgagee, and the latter released its claim under the policy now being sued upon and also released its mortgage. We think there can be no question but that Sutherland got the direct benefit of the full sum paid in by the Lloyd's people.

[5] But, if it has not already received the benefit of such payment, it can do so, upon request. It is entitled to it as a matter of law. This is well settled. See Sisk v. Rapauano, 94 Conn. 294, 108 A. 858, 11 A. L. R. 1295; Thorp v. Croto, 79 Vt. 390, 65 A. 562, 10 L. R. A. (N. S.) 1166, 118 Am. St. Rep. 961, 9 Ann. Cas. 58; Parker v. Ross, 73 Tex. 633, 11 S. W. 865; Insurance Co. v. Colvard, 135 Ga. 188, 68 S. E. 1097; Insurance Co. v. Marshall, 48 Kan. 235, 29 P. 161.

In the case last cited, it was held that payment on a policy similar to the Lloyd's policy here would be considered a satisfaction pro tanto on the amount due on the notes and mortgage.

We quote as follows, in this connection, from written argument filed by plaintiff in error:

"In the case of Sisk v. Rapauano, 94 Conn. 294, 108 A. 858, which is annotated in 11 A. L. R. 1295, a long list of citations is made (page 1296) in support of the following statement of the law: 'Where the mortgagee obtains insurance under an agreement with the mortgagor, or for the benefit of the mortgagor as well as himself, the proceeds, in case of loss, must be applied on the indebtedness. * * * The mere fact that the mortgagor has paid or is liable for the insurance premium has been held sufficient to require the proceeds of an insurance policy taken out by the mortgagee to be applied as a payment on the mortgage.'"

No court in the world would permit the Murray Company to keep the proceeds of the Lloyd's policy and then collect the mortgage indebtedness from Sutherland. And, as shown by the record, such indebtedness has already been released anyway.

We think the plaintiff in error is entitled to the benefits of its "additional insurance" policy provision already quoted by us, and that it has the right to prorate this loss. This brings us to a consideration of the extent of the loss. It cannot, under the terms of the policy, be more than three-fourths of the cash value of the property destroyed. It is agreed that the property doubly insured had a value of $14,000. Three-fourths

of that amount is $10,500. This latter amount should be prorated by the two companies, neither being required to pay more, in any event, than the maximum amount agreed to in its policy. In the case at bar, plaintiff in error could not be required to pay more than $8,000 on this particular property. As a matter of fact, the Lloyd's had $7,750 on this same property. Plaintiff in error covered $8,000 thereon. Therefore, the recovery under the policy in suit should be in the ratio that $8,000 bears to the total insurance of $15,750. This percentage is about 50.8. That percentage of three-fourths of the value of the property, which three-fourths was $10,500, is the sum of $5,334. Therefore the recovery under the $8,000 portion of the insurance covered by the policy in suit should have been the sum of $5,334.

Of course, the $2,000 on the building is not affected by the Lloyd's policy. The latter contract did not insure the building. The judgment for the $2,000 under the policy in suit should stand. The total judgment should have been for $7,334 instead of $10,-000.

[6] Our Supreme Court, on March 31, 1926, in opinions by Justice Greenwood, sustained the validity of the three-fourths value clause in policies of this kind. The cases referred to are those of Milwaukee Mechanics' Insurance Co. v. West Development Co., 282 S. W. 562, and Commercial Union Assurance Co. v. T. J. Preston, 282 S. W. 563. These cases are not yet [officially] reported. We quote from the opinion in the Preston Case as follows:

"Speaking of the three-fourths value clause, Gephart says, on pages 184 to 186 of his book on Principles of Insurance: 'The prime purpose of this clause is to prevent overinsurance, just as the coinsurance clause is intended to encourage a reasonable amount of insurance. * * * Fire not only destroys the property with overinsurance on it, but it may also spread to adjoining property and occasion losses both on insured and uninsured property. The three-fourths value clause thus makes it to the interest of the insured to care for his property. It has a significance not only for all insured property owners, but also for other property owners and the public at large. It reduces the moral hazard among holders of insured property, and this contributes to producing a fair burden in the charge for each. It reduces the hazard for those whose property is not insured, and it is in harmony with good public policy, because it is in opposition both to criminal acts and undue carelessness in the use of property.'"

[7] It has never been the policy of our courts to permit any one to profit by a fire. When the owner knows he must lose 25 per cent. of the value of certain classes of property, if destroyed by fire, he has no incentive to burn it. Sound public policy demands that destruction of property by fire be discouraged in every legitimate way. The best way to

discourage it is to require a man to carry a part of his own insurance. In other words, the making of a profit should be impossible. With no hope of profit, temptation to burn one's own property is largely withdrawn.

It should not be necessary to say that we are not determining in this suit any rights which the Lloyd's company may still have by reason of the double insurance on this property. That company is not before us pressing its rights. If it has overpaid under its policy, without fault on its part, it may still have an opportunity to recover its losses. We do not say whether it has any such rights or not. We merely want to make it plain that we are not passing upon its rights in any way. We are merely called upon to see that plaintiff in error does not pay more under the contract than it should pay.

In view of what we have said, we recommend that the judgments of the District Court and Court of Civil Appeals be reformed so as to award defendant in error a judgment against plaintiff in error for $7,-334, together with interest thereon at the rate of 6 per cent. per annum from January 23, 1925, that being the date from which the district court allowed interest; that, as so reformed, the judgments of said courts be affirmed. We further recommend that the costs of court in the Supreme Court and Court of Civil Appeals be assessed against the defendant in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals reformed and affirmed, as recommended by the Commission of Appeals.