# Girard Fire & Marine Insurance Company of Philadelphia v. Anglo-American Mill Company.

(Decided May 24, 1927.)

## Appeal from Daviess Circuit Court.

1. Insurance.—There is no such material conflict between interests of insured and insurer as to render incompatible duties of general insurance agency representing several companies, which bona fide accepts application from patron for certain amount of insurance and furnishes it, either by writing insurance in single company or by dividing it among several, and renewing policies on maturity or rewriting them in other companies on cancellation.

2. Local agency representing several insurance companies held not agent of both insured and insurer in canceling policies covering property on which insured requested agent to maintain insurance and issuing in good faith a new policy in another company.

3. Insurance.—That insurance agent, actuated by desire to secure commission, might place undesirable cancelled risk in another company, or fraudulently issue new policy and make entries and notations on records after fire, is no defense to action thereon.

4. Insurance.—Insured may legally constitute insurer's agent his trustee or agent for purpose of receiving and retaining custody of policy, and such agency does not conflict with duty owed to insurance company, so as to invalidate policy not delivered to insured until after fire.

5. Insurance.—Canceled policies held not effective, or substituted policy sued on invalid, because of agent's failure to notify insured of cancellation before fire, as required by such policies; such provision being for benefit of insured, who may waive it, and fully met by agent's issuance of new policy on insured's direction and retention thereof for him in accordance with usual custom.

6. Insurance.—Where insured and insurer's agent intended to insure only insured's mill and its adjuncts, policy, in which elevator intended to be included was improperly described as not located in mill, by mutual mistake and inadvertence, may be reformed to conform to party's intention, even after destruction thereof by fire.

GORDON & LAURENT and LA VEGA CLEMENTS for appellant.

SANDIDGE & SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The Anglo-American Mill Company sued the Girard Fire & Marine Insurance Company on a fire policy of $3,000, dated August 28, 1924, covering a small mill on

Ninth street in Owensboro. The insurance company answered, denying that the policy in suit was issued, executed, or delivered, and otherwise traversed the allegations of the petition, but did not plead affirmatively. By agreement the law and facts were submitted to the court, who returned written findings as to each. The findings of fact were: "Prior to and on July 19, 1924, the plaintiff, mill company, held two policies of $3,000 each on its West Ninth street mill property, one in the National Union and the other in the Camden. On that day Miss L. Otis, local agent for the National Union, the Camden, the Girard, and the Western Companies, canceled the Camden policy and immediately issued and substituted therefor policy No. 126 in the Girard Company and No. 187607 in the Western Company, each for $1,500. She delivered these policies in person to the mill company. Mr. Little, president of the mill company, looked at them and told her that it was all right for her to cancel and rewrite insurance for the mill company on its West Ninth street property, so as to keep it insured to the amount of $6,000 as the company was short on insurance at that place. At the time, the companies she represented were carrying a large amount of insurance on the main plant, and he instructed her as these matured to notify him, as he wished to reduce it somewhat, and later this was done. On August the 28th the Western Company instructed Miss Otis by mail to cancel policy No. 187607, which she did. She also cancelled the Girard Policy No. 126, and in lieu of these two policies issued a new policy No. 128 in the Girard Company for $3,000, and dated it back to July 19, 1924, in order to avoid making a premium charge for a short time on policy No. 126. She also at that time made entries on her books showing the cancellation of the two $1,500 policies and the issual of the $3,000 policy in lieu of same; all of this being in accordance with the usual custom in similar cases. After rewriting this insurance and some other policies, she went to a dentist and had two teeth extracted. She became ill that afternoon and went home before the usual hour. She was ill for several days afterward and at her office for only a part of the time each day, doing no outside work. She wrote a great deal of insurance for the Anglo-American Mill Company and it was not unusual for her to hold policies for it for several days after writing them. In many instances she held such policies for more than a month before making manual delivery; the course of

dealing between them being such that she was authorized upon a cancellation of a policy to issue a new one for the mill company without giving it notice of the cancellation or asking it for special instructions.

The West Ninth street property was destroyed by fire about 1 o'clock a. m. on September 6, 1924. Mr. Little informed Miss Otis of the fire while she was at her home. She went to her office and later to the plant of the mill company, carrying with her the Western Company's cancellation, the letter of August 28th, and the new policy. She then explained to Mr. Little what she had done, handing him the policy for $3,000, and at her request received from him the two $1,500 policies which had been canceled. Some conversation ensued between them in reference to a small grain elevator which had formerly stood on the rear of the Ninth street lot, but which had been removed some time previously; Mr. Little explaining that the elevator covered by the insurance was located in the destroyed building. Miss Otis did not know of this, but promised him to explain the situation to the company and to write that afternoon. On her return to the office she wrote both the Girard Company and the Camden Company a letter in reference thereto. At the same time she wrote the Girard Company, detailing the facts with reference to the cancellation of August 28th of the Western policy and of the Girard policy No. 126 and the issual in lieu thereof of Girard policy No. 128 for $3,000. She inclosed both in the same envelope together with canceled policy No. 126 and her daily report showing the issual of policy No. 128 and the amount of premium thereon. When this letter and inclosures were received by the company, it entered policy No. 128 on its books in the usual way and charged the premium due thereon against her account and at that time made no protest against what she had done in the matter of canceling No. 126, or in issuing and delivering No. 128. On September 23d Mr. Gorham, state agent of defendant company, came to Owensboro. Miss Otis informed him of the facts in reference to the cancellation of the policy No. 126 and the issual of the $3,000 policy. He approved of what she had done and instructed her to place a rider on the policy No. 128, showing that it covered the elevator in the building instead of the elevator which had formerly stood on the rear of the lot. Miss Otis informed Mr. Little of that fact early next morning. Later Mr. Gorham called and asked Miss Otis if the rider had been

mailed. She told him that it had not and then he directed
her not to mail it. After he left she realized that she had
already informed Mr. Little that the company had con-
sented to the rider being attached to the policy and
thought it was her duty to mail it, which she did. At the
same time she mailed a copy to Mr. Gorham, explaining
why she felt obliged to mail out the rider. Mr. Gorham
did not respond to this letter, but retained the copy of the
rider which showed that it was to be attached to policy
No. 128. At that time, September 24th, the company re-
tained possession of policy No. 126, which it had received
on September 6th, and continued to hold that policy until
October 1st, when Mr. Gorham returned to Owensboro
and took it to the office of the mill company and tendered
it to Mr. Little, at the same time demanding a return of
policy No. 128. On November 3, 1924, the accounting de-
partment sent Miss Otis a letter demanding that she pay
the premium on No. 128. The property insured was to-
tally destroyed by fire and each of the items covered by
insurance was of greater cash value than the insurance.

Miss Otis also testifies that, when she accepted appel-
lant's agency on July 19, 1924, she asked him if he wrote
flour and feed mills and told him of the insurance she was
carrying on the Ninth street property and had had some
trouble in keeping it placed, and that he told her that that
made no difference, the company would write anything
she had in Owensboro and specifically authorized her to
write the full amount of $6,000.00 on this property. This
is denied by the agent.

The conclusions of law were that Miss Otis, as the
agent of a number of insurance companies, could be au-
thorized by plaintiff, in case one of its policies issued by
her should be cancelled, to rewrite the insurance in an-
other company, so as to keep the insurance on the West
Ninth street mill property up to $6,000.00, and that, al-
though she was the agent of the insurer, she could be
authorized by the insured to accept delivery of such new
policies; that she was authorized in this instance to keep
this property insured for $6,000.00, and to procure other
policies for such as might be canceled, and that actual
manual delivery to the plaintiff of the substituted policy
sued on was written on the 28th of August and was in
force and effect immediately, although not handed to the
insured until after the fire; that Miss Otis, as agent, could
and did hold it in trust for plaintiff. The court further

found that it was not necessary in order to make said policy effective for her to notify the insured of the cancellation of the previous policy or the issuing of this one, and that the insured could and did after the fire ratify Miss Otis' action in canceling the two $1,500.00 policies and issuing the $3,000.00 policy, and that this action was also ratified by the insurance company after the fire and with full knowledge of all the facts.

Appellant insists that, without any notice to it, Miss Otis was acting as agent for appellee in procuring insurance upon its property; that such conduct was incompatible with her duty to it; and that, by reason of this dual agency, the policy so issued by her imposed no liability upon it. We cannot assent to this argument. While there is some conflict, the great weight of authority is to the effect that there is not such a material conflict between the interests of the insured and the insurer as to render incompatible the duties of a general insurance agency representing several companies which bona fide accepts an application from a patron for a certain amount of insurance and furnishes this, either by writing the insurance in a single company or by dividing it among several companies according to its selection, and renewing the policies upon maturity or rewriting them in other companies upon cancellation. Policies so written are usually upheld even in those jurisdictions which construe the relation between the parties in a sense as a dual agency. See 32 C. J. title "Dual Agencies," p. 1055; Washburn v. U. S. Casualty Company, 106 Me. 411, 76 A. 902; Hollywood Lumber Co. v. Dubuque F. & M. Ins. Co., 80 W. Va. 604, 92 S. E. 858, and cases there cited; Alliance Ins. Co. v. Continental Gin Co. (Tex. Civ. App.) 274 S. W. 299; American Fire Ins. Co. v. King Lbr. Co., 74 Fla. 130, 77 So. 170; John R. Davis Lbr. Co. v. Hartford Fire Ins. Co., 95 Wis. 226, 70 N. W. 84, 37 L. R. A. 131; Amarillo National Life Ins. Co. v. Brown (Tex. Civ. App.) 166 S. W. 658; North British Fire Ins. Co. v. Lambert, 26 Or. 199, 37 P. 909; Parker v. Knights Templar, 70 Neb. 268, 97 N. W. 281; Hamm Realty Co. v. New Hampshire Fire Ins. Co., 80 Minn. 139, 83 N. W. 41; Griffith v. Anchor Fire Ins. Co., 143 Iowa 88, 120 N. W. 90.

But did the relation between the parties create a dual agency in this particular. Mr. Little requested Miss Otis to keep the insurance up to $6,000.00. She did not agree to procure insurance for him in any company outside of

her agency. Instead of Miss Otis acting as an insurance broker or as his agent in procuring insurance, Mr. Little was in effect making a continuing application for $6,000.00 insurance on this property to such companies as she represented. To a company that wrote insurance on mill property there was nothing objectionable in this particular risk. No one claims that it was overinsured, or that anything occurred to increase the hazard. The Camden Company continued to carry its risk and the appellant was in no wise dissatisfied with its $1,500.00 policy although both these companies knew there was a total coverage of $6,000.00. True, there had been some cancellations, but Miss Otis says she told appellant's state agent of that fact and that he specifically authorized her to place the entire $6,000.00 with appellant, though, as we have seen, he denied this. However that may be, she had general authority to issue policies and naturally wanted legitimate business. In accepting Mr. Little's instruction it does not appear that she assumed any contractual obligations or did more than tentatively accept his application, it being evident that, if none of her companies desired the risk, it would have been declined. If a property owner applies to an insurance agent for a policy on certain property to be issued at a future date or upon the completion of a building in the course of construction and the agent complies with his aplication, can it be argued that the insurance agent is acting as the agent of the property owner? Or, if upon cancellation of a policy the insured is notified and then applies for a reissue in another company and such policy is issued, does this make the insurance agent the agent of the insurer? Manifestly not, and, if not the same principle should apply where a local agency representing several companies cancels a policy upon which the insured has requested him to maintain the insurance and bona fide issues a new policy in accordance with the application.

It is said, however, that the insurance agent would be actuated by a desire to secure his commission and interested in maintaining the insurance and thus be induced to place an undesirable canceled risk in another company, or that under this record the agent could have framed the facts by fraudulently issuing a policy and making the entries and notations upon her records after the fire and that she ought not to be placed in a position where it is possible to do this. While plausible, this argument is not

convincing. Thus construed, the interest of the agent would at all times be opposed to that of the insurance company merely because he receives a part of the premium, and this would apply with equal force to all policies, whether new issues, renewals, or policies issued in lieu of cancellation; also he could act fraudulently in any of these matters, and each affords an equal opportunity for like misconduct, and, if applied so strictly as to obviate all opportunity for misconduct, the rule would destroy all the insurance agencies in the country.

It is forcibly argued that policy No. 128 was ineffective because not delivered to Mr. Little until after the fire. As to this, it may be said that it is the uniform custom and practice among recording agents to issue policies for their customers and either to mail them or to deliver them personally at their convenience, or to hold them in their office for their patrons for an indefinite time, and such is the proven custom and practice of the parties in this case. And while there is some difference of opinion as to whether an insurance agency in issuing other insurance upon the cancellation of a policy is to be regarded as an agent for the insured, and in a few cases this practice has been condemned, there is no dissent to the rule that the insured may legally constitute the insurance agent his trustee or agent for the purpose of receiving and retaining the custody of the policy, as in no possible way can this conflict with the duty he owes the insurance company.

It is next insisted that Miss Otis gave no notice before the fire to Mr. Little of the cancellation of the two $1,500.00 policies, both of which provided for five days' notice to the insured before such cancellation, and that, therefore, those policies are still in effect and the substituted policy sued on is invalid. Clearly this is untenable. The purpose of this provision is to enable the owner to keep his property insured continuously and he is thus afforded five days in which he can procure substituted insurance before the cancellation becomes effective. The provision being for the benefit of the insured, it may be waived by him. If by his direction the insurance agency issues a new policy in lieu of the one canceled and retains it for him in accordance with a usual custom, the purpose of the provision is fully met, as the conduct of the agent in so doing in no wise conflicts with her duty to the insur-

ance company. This constituted a valid waiver by the insured. London & Lancashire Ins. Co. v. Turnbull & Co., 86 Ky. 230, 5 S. W. 542, 9 Ky. Law Rep. 544; Rogers v. Ramey, 198 Ky. 138, 248 S. W. 254; Union Bank of Berry v. National Surety Co., 195 Ky. 504, 243 S. W. 13; Continental Ins. Co. v. Stratton, 185 Ky. 523, 215 S. W. 416, 8 A. L. R. 391; Hopkins v. Phoenix Ins. Co., 200 Ky. 365, 254 S. W. 1041, relied upon by appellant, may all be distinguished from this case. In the first-named case, Spaulding & Co., as general agents, had issued a policy in the London Company, on Turnbull & Co.'s stock of merchandise. Turnbull had not authorized them to issue any other insurance in the event of cancellation and no custom of holding policies for them was shown. The London Company directed Spaulding & Co. to cancel the policies. They attempted to do this and re-insure in other companies without giving any notice to Turnbull or delivering the new policies to them. The property was destroyed by fire. Turnbull repudiated the new policies and sued the London Company. The court, of course, held the London company liable. The opinion criticised Spaulding & Co. for trying to foist a new policy on Turnbull & Co. against their will, and intimated that in such case they could not act as agents for the London Company and for the company in which the new insurance was written. But the reasoning of that case cannot apply to the facts of this case, as here, unquestionably, appellant knew that Miss Otis was conducting a general agency for several companies, and it is not contended that she could not do this. In the Hopkins case an application not stating the duration of the insurance was received and binder was made on Sunday. A policy conforming to the binder was written and mailed on Monday. In the meantime the property was destroyed by fire. The court held that, as the application did not, and the binder did, fix the duration of the insurance, the minds of the parties did not meet on this, and the issual of the policy and its delivery after the fire was ineffective; hence there was no insurance in effect at the time of the fire. The Stratton case holds the same. In the Ramey case the court merely recognized the settled doctrine that an insurance agent cannot issue a policy upon his own property or the property of a corporation of which he is a member, and the same principle was involved in the Berry case, supra, and Weatherholt case, 204 Ky. 824, 265 S. W. 311.

As written, the original policy covered appellant's pro rata of $1,000.00 "on a one-story metal roof frame building occupied as a grain elevator." It appears that this building formerly stood on the same lot with the mill, but was removed some time before the policy was issued and the elevator installed in the mill. After the fire Mr. Little discovered and called attention of the agent to this fact and she took it up with her companies. Upon his visit to Owensboro the state agent agreed for another rider to be issued covering this property as located in the mill, and this was done. These facts were set up in the petition and judgment asked for the entire amount of the policy and this was awarded by the court. The destroyed elevator was not covered by the original policy, and unless it was the intention of the parties at the time it was written for it to be so covered, no recovery can be had thereon. On the other hand, if it was their intention to include it, and by mutual mistake and inadvertence of the draftsman it was improperly described, the policy could be reformed in a court of equity and likewise the parties themselves, even after the fire, could agree to such reformation. We have seen that Mr. Little requested Miss Otis to carry $6,000.00 on the mill property and that she intended to do this. It was not intended by either to insure property not in existence, but only the mill and its adjuncts. The minds of the parties met on this proposition and under such circumstances a mistake in the description of the elevator in the policy may be corrected and that instrument reformed to conform to the intention of the parties.

Wherefore the judgment is affirmed.