## Sun Ins. Office, Limited, v. Thomas.

(Decided Dec. 3, 1935.)

GORDON, LAURENT, OGDEN & GALPHIN for appellant.

H. W. ALEXANDER. LESLIE W. MORRIS and MARION RIDER for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellee, John G. Thomas, recovered a judgment for $2,000 against the Sun Insurance Office, Limited, on an insurance contract, and the company has appealed.

The appellee owned a lumberyard in Owenton, Ky., and just prior to May 3, 1933, the building, machinery, and materials thereon were insured for the sum of $26,750. He had been engaged in the lumber business since 1923, and had carried insurance on the building and its contents and the lumber on the lot in amounts ranging from $20,000 to $40,000, the amount of the insurance changing as the value and amount of materials on hand decreased or increased.

On May 3, 1932, the Great American Insurance Company through its local agent, Harry Duvall, issued to appellee its policy for $2,000. This policy covered only personal property and expired on May 3, 1933. Before its expiration, Harry Duvall ceased to act as the local agent for the company, and the agency was transferred to J. B. Wilson. On the day the policy expired, Wilson informed appellee that he was then representing the Great American Insurance Company and requested that he be permitted to issue a policy for $2,000 for the year beginning May 3, 1933. Appellee accepted a policy in the Great American Insurance Company issued by J. B. Wilson, its new agent. The policy was for the same amount and covered the same property as the expired policy. On May 6, 1933, three days after the policy was issued, the insured

building and its contents were destroyed by fire. The insurance policies on the property had been issued by four local agents. On the morning after the fire, appellee requested J. B. Wilson to make a list of the policies in force, and pursuant to that request Wilson visited all of the agencies through which policies had been issued and found that the insurance in force amounted to $28,750. This included a policy for $2,000 of the Sun Insurance Office, Limited, issued on May 3, 1933, by Harry Duvall, its agent. The policy had not been delivered to appellee, but was in a safe in Duvall's office. A few days after the fire, appellant's state agent went to Owenton and obtained possession of the policy from Duvall. The company denied liability on the ground that the policy was issued by its agent and kept in his office without the knowledge of John G. Thomas, and without any request by the latter that the agent procure a policy continuing the insurance expiring on May 3, 1933. This action was then instituted by Thomas to recover the face value of the policy, and the case having been submitted to the court without the intervention of a jury, judgment was entered for the plaintiff in the sum of $2,000.

The plaintiff alleged in his petition that the defendant issued to him the policy in consideration of the sum of $21, the annual premium, which he paid to the local agent. At the trial the plaintiff admitted that he had not specifically requested Duvall to issue the policy in question, and did not know it had been issued until inquiries were made of the local agent on the day after the fire. He had not paid the premium when the fire occurred, but paid it to the agent several weeks later. He based his right to recover solely on instructions he claimed he had given Duvall that the latter should keep in force all insurance carried by him for the plaintiff unless notified to decrease or increase it. He testified that when he accepted the policy for $2,000 in the Great American Insurance Company, issued by J. B. Wilson, its agent, on May 3, 1933, it was with the intention to increase his insurance to that extent, and that he expected Duvall, who had issued the expiring policy a year previously, to follow his instructions and issue a policy for the same amount in some company represented by him.

The principal question presented on this appeal is whether or not there is sufficient evidence tending to

show that such an understanding existed between appellee and Duvall to sustain the chancellor's finding.

Appellant argues that no more than a mere custom of the insurance agent to renew appellee's expiring policies is shown, and that this alone is not sufficient to fasten liability upon it in the absence of a request by the appellee that the policy be issued or acceptance by him of the policy before the fire occurred. The evidence, however, shows more than a mere custom on the part of the agent to renew expiring policies which he had issued to the appellee. Mr. Thomas testified that he had frequently instructed Duvall to keep in force the policies which had been issued by him, and to maintan his insurance at the amount represented by these policies until he was specifically instructed to alter the amount. Duvall testified that appellee had instructed him to keep in force all policies issued by him, and that his books showed that a policy issued by him in the Great American Insurance Company expired on May 3, 1933, and since he no longer represented that company he, on that day, issued the policy in question for the same amount as the expiring policy and on the same property.

It is argued that plaintiff at no time instructed Duvall to keep in force any specific amount of insurance, but at most merely directed him to continue the insurance carried by him at the time the instruction was given, and the burden being on plaintiff to show that the amount in force through Duvall at the time of the fire was less than the amount when the instruction was given, unless the policy in question is included, the plaintiff must fail, since there is no evidence on this point. We do not so understand the evidence. The testimony of the plaintiff on this point is clear. He testified that he increased or decreased the amount of insurance from time to time accordingly as the value of materials on hand changed, but under the agreement with Duvall the latter was "to keep my insurance whatever the amount, to keep that in force unless I gave him instructions to cancel or increase." Duvall testified to the same effect. Thus the amount to be kept in force by the agent was the amount carried by him from time to time, and upon the expiration of any policy which had been issued by him it was his duty to issue a new policy for the same amount up-

on the same property. The selection of the insurer was left to the agent. The agreement did not require him to issue the new policy in the same company which issued the expiring policy, but it merely contemplated that the policy would be issued by some company represented by him. The failure of the agent to deliver the policy to Mr. Thomas before the fire, and the non-payment of the premium before that time, did not render the policy ineffective. Duvall had issued two policies on the same property to Mr. Thomas in other companies, and these policies had not been delivered at the time of the fire. The evidence shows that it was the custom of Duvall and Thomas to make a settlement once or twice a year when the premiums on policies issued by Duvall since the last settlement were paid and the policies were delivered.

In Girard F. & M. Ins. Co. v. Anglo-American Mill Co., 220 Ky. 173, 294 S. W. 1035, 1038, the court in discussing a similar question said:

"As to this, it may be said that it is the uniform custom and practice among recording agents to issue policies for their customers and either to mail them or to deliver them personally at their convenience, or to hold them in their office for their patrons for an indefinite time, and such is the proven custom and practice of the parties in this case. And while there is some difference of opinion as to whether an insurance agency in issuing other insurance upon the cancellation of a policy is to be regarded as an agent for the insured, and in a few cases this practice has been condemned, there is no dissent to the rule that the insured may legally constitute the insurance agent his trustee or agent for the purpose of receiving and retaining the custody of the policy, as in no possible way can this conflict with the duty he owes the insurance company."

The method employed by Duvall in issuing the policy in question was in accordance with the uniform practice theretofore employed by him in his transactions with Mr. Thomas, and in strict accordance with the latter's authorization to maintain insurance protection for him. In view of their testimony as to the agreement between them, there can be no doubt as to the liability of Mr. Thomas for the premium.

Appellant insists that the evidence fails to show Mr. Thomas intended to increase his insurance to the extent of $2,000 when he renewed the policy in the Great American Insurance Company on May 3, 1933, through J. B. Wilson, its then agent, and that when he discovered later that Harry Duvall had issued a policy on May 3, 1933, for the same amount and on the same property, this was a fortuitous circumstance of which he promptly took advantage. The testimony of Mr. Thomas, however, refutes this theory, and we think the evidence sustains the lower court's finding that the policy in question was in effect at the time of the fire.

The appellant also contends that the contract of insurance is unenforceable because the agreement between the appellee and Harry Duvall, the local agent, is within the statute of frauds (Ky. St. sec. 470). It is said that the contract was not in writing and could not be performed within a year. Be that as it may, this is not a suit to enforce that contract or to recover damages for its breach. It is to enforce a contract made pursuant to the oral agreement. The appellant was not a party to the oral agreement, and was not chargeable with any duty thereunder. The statute has no application as to it. Niagara Fire Ins. Co. v. Layne, 162 Ky. 665, 172 S. W. 1090.

Attached to the policy issued by Duvall was a rider containing both a pro rata and a three-fourths value clause, which read:

"It is made a condition and part of the consideration of this policy, that in the event of loss, this company shall not be liable for an amount greater than three fourths of the actual cash value of the property covered by this policy at the time of such loss and in case of other insurance, whether policies are concurrent or not, then for only its pro rata proportion of such three fourths value."

It is argued that even though the contract of insurance is valid, the appellant is liable only for such proportion of three-fourths of the actual cash value of the property at the time of its destruction as the amount of its policy bore to the total amount of insurance, and we think this contention is sound. The actual cash value of the insured personal property at

the time of the fire was $26,213.51, and the total amount of insurance on the personal property, including the policy here in question, was $23,765.09. If the entire amount of insurance had been carried in óne policy with a three-fourths value clause attached thereto, the insurer's liability would have been limited to an amount equal to three-fourths of $26,213.51, the actual value of the property, or $19,660.13. The situation, in so far as appellant is concerned, is not altered because there were several policies and some of them did not contain the three-fourths value clause. Its contract specifically limited its liability to an amount not greater than three-fourths of the actual cash value of the property at the time of the loss, and in case of other insurance, then for only its pro rata proportion of such three-fourths value. According to appellee's own estimate, three-fourths of the actual cash value of the personal property at the time of the loss was $19,660.13. Since the total amount of insurance was $23,765.09 and appellant's policy was for $2,000, it is liable for only $1,655.39.

Section 762a-22 of the Kentucky Statutes, which provides that the insurer shall be liable for the value of insured real estate as fixed in the policy, does not avoid a three-fourths value clause in a policy on personal property. Germania Ins. Co. v. Ashby, 112 Ky. 303, 65 S. W. 611, 23 Ky. Law Rep. 1564, 99 Am. St. Rep. 295; Hudson v. Scottish Union & Nat. Ins. Co., 110 Ky. 722, 62 S. W. 513, 23 Ky. Law Rep. 116; Phœnix Ins. Co. v. Wintersmith, 98 S. W. 987, 30 Ky. Law Rep. 369. Likewise, a stiuplation in a policy that the insurer's liability shall be limited to such proportion of any loss as the amount of its policy bears to the whole insurance on the property is valid. Central States Fire Ins. Co. v. Jenkins, 220 Ky. 566, 295 S. W. 855, 54 A. L. R, 86; Sun Ins. Office v. Varble, 103 Ky. 758, 46 S. W. 486, 20 Ky. Law Rep. 556, 41 L. R. A. 792.

The fact that the loss exceeded the total amount of insurance does not render the pro rata clause inapplicable. The three-fourths value clause attached to the policy very clearly limited appellant's liability to its pro rata proportion of three-fourths of the actual cash value of the property at the time of the loss. Niagara Fire Ins. Co. v. Johnson, 231 Ky. 426, 21 S. W. (2d) 794; Camden Fire Ins. Ass'n v. Sutherland (Tex.

Com. App) 284 S. W. 927; Milwaukee Mechanics' Ins. Co. v. West Development Co., 115 Tex. 361, 282 S. W. 562.

The appellee suggests that the three-fourths value clause should not be considered a part of the policy, since the Kentucky Actuarial Bureau directed the agent to eliminate it. This took place, however, after the fire. When the loss occurred, the clause in question was in effect, and the appellee must rely on the contract as it then existed, unless he shows that the clause was put in the contract by mistake, which might be ground for an action to reform the policy. This he failed to do.

On account of the court's failure to give effect to the three-fourths value and pro rata clause of the policy, the judgment is reversed for further proceedings consistent herewith.

The whole court sitting.